ADHESIVE PRODUCTS COMPANY *vs.* ANDREW R. RIDDER-STROM & others.

Essex.   February 5, 1930. — February 26, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Contract,* Validity.

Four individuals formed a corporation to develop and market a machine. It was agreed that each should have forty-nine shares of stock in return for contributions to be made by him. The contribution of one of them was the development of the machine. He duly received his shares when the development of the machine had progressed sufficiently. It later was agreed that he would not turn the machine over to the corporation outright, but would turn over the selling rights instead, and an agreement in writing was executed by him and the corporation to the effect that, the corporation desiring him "exclusively to assign the sole sales rights of . . . [the machine] . . . recently developed by him and not as yet bearing a Patent Number, . . . [he] agrees to assign to . . . [the corporation] in consideration of 49 shares of . . . [its] Capital Stock, said rights upon receipt of Patent Number." In a suit in equity subsequently brought by the corporation against him to restrain violation of the plaintiff's selling rights under the agreement, for an accounting and for damages, it was *held,* that the agreement was void by reason of uncertainty as to the time of performance by the defendant, it being impossible to determine from the agreement in the light of all the circumstances whether the defendant was obliged to make the assignment when a patent application number should be allotted to him or when a final patent number should be received on his application for a patent.

BILL IN EQUITY, filed in the Superior Court on May 16, 1929, and afterwards amended, against Andrew R. Ridderstrom, The Prime Manufacturing Company and Rotary Machine Company.

The bill as amended contained allegations that the defend-

ant Ridderstrom executed the agreement of October 10, 1927, quoted in the opinion; that he was interested in various capacities in the defendant corporations; that, after the execution of said agreement, he assigned his rights in the "Tape machine" to the defendant, The Prime Manufacturing Company; that the defendants Ridderstrom and The Prime Manufacturing Company had been putting said machines on the market through the medium of the defendant Rotary Machine Company in violation of said agreement; that the defendants had "combined and conspired to prevent the plaintiff from obtaining the benefit of said contract, to interfere with the performance of the same, to deprive the plaintiff of his property rights under said contract, to appropriate to themselves the selling rights of said machine, by placing on the market and selling said machine in violation of the plaintiff's rights and competition with the plaintiff, by representing to the trade that the plaintiff has no right to handle said machines, that it cannot supply machines with parts, that the machines sold by the plaintiff are second-hand machines"; and that the plaintiff had issued forty-nine shares of stock to the defendant Ridderstrom and otherwise complied with the agreement. The plaintiff sought an accounting of profits, an injunction against the defendants' selling the machines except through the plaintiff, damages and that the defendant Ridderstrom's stock in Rotary Machine Company be reached and applied in payment of damages.

The suit was referred to a master, material facts found by whom are stated in the opinion. By order of *Bishop*, J., there were entered an interlocutory decree sustaining certain exceptions by the defendants to the master's report, which otherwise was confirmed; and a final decree dismissing the bill. The plaintiff appealed. It did not appear from which decree he appealed.

*H. D. Linscott*, for the plaintiff.

*D. P. Ranney*, for the defendants.

PIERCE, J. This is a bill in equity brought in the Superior Court, whereby the plaintiff seeks an injunction and damages against the defendants for the violation of the

plaintiff's alleged "sole sales rights of a machine called a Tape machine" developed by the defendant Andrew R. Ridderstrom. After the completion of the pleadings the case was referred to a master "to hear the parties and their evidence, and report his findings to the court, together with such facts and questions of law as either party may request." All parties appeared at the time and place set for a hearing on the draft report, and the defendants then presented seventeen objections. The report of the master was then filed in the form in which it now appears. On the plaintiff's motion that the master's report be confirmed and a final decree entered, the court by an interlocutory decree ordered and adjudged that the defendants' exceptions numbered one, two, three and four be sustained and that otherwise the report "be and it . . . is confirmed." By final decree it was ordered by the court "that the plaintiff's bill of complaint be dismissed without costs." The case is before us on the appeal of the plaintiff.

The material facts found by the master in substance are that in 1926 four men, Evans, Bowman, Gill and the defendant Ridderstrom, became interested in the development of a so called "cold process" tape for use in making shoes. These four decided to incorporate and form the plaintiff corporation. Ridderstrom had been interested in tape and also in tape laying machines. His contribution to the joint enterprise was to be a machine for applying the cold process tape. Each of the four was to have one quarter of the stock. Gill was to put $5,000 in for his share, Bowman was to contribute his formula for making the cold process tape, Evans was to promote the company, and Ridderstrom was to develop the machine. The corporation was duly organized. The charter provided for two hundred shares of no par value stock. Gill received forty-nine shares (later another share to make fifty); Bowman received one hundred and forty-eight shares in return for his formula, that being considered the most tangible asset against which the stock could be issued; Evans and Ridderstrom were to receive their stock by transfers from Bowman. The two or three odd shares were issued to the

original incorporators as qualifying shares. These transactions took place in February, 1927. In due time Bowman surrendered his certificate for transfer and received a new certificate for his fifty shares. In May, 1927, Evans received a certificate for forty-nine shares; Gill presumably received a certificate for fifty shares. Ridderstrom did not receive his certificate at once, as Bowman refused to release his stock until Ridderstrom gave some evidence that he would complete the promised machine. In July, 1927, however, the development of the machine having progressed sufficiently, Bowman consented, and Ridderstrom received his certificate for forty-nine shares.

About this time the plaintiff, which was then engaged in the business of manufacturing and selling tape, discovered that it needed more capital and opened negotiations with one Parks of Fall River. From that time until December, 1927, a series of meetings were held in Fall River at which various phases of the enterprise were discussed. At one of these meetings Ridderstrom surrendered his certificate of stock, as did the other stockholders, and received in its place a certificate for one share in the A & M Holding Company, a corporation formed to hold the stock of the plaintiff and the medical product company. On October 10, 1927, there was a meeting at which Evans, Gill, Ridderstrom, Parks and one Gee were present. There had been some previous talk by Ridderstrom to the effect that he did not wish to turn over the machine absolutely to the plaintiff, as there were some principles in it which he thought he could use in some other machine, but that he would turn over the selling rights instead. This proposition was satisfactory to the others and, accordingly, at this meeting an agreement was drawn up and signed by Gee, as treasurer of the plaintiff company and by Ridderstrom individually, which purported to be sealed. The instrument in fact was not under seal. The agreement reads: "Agreement made this tenth day of October 1927 by and between Andrew R. Ridderstrom and the Adhesive Products Co. both of Lynn, Massachusetts. Witnesseth, that whereas the Adhesive Products Co. desires the said Andrew R. Ridderstrom exclusively to

assign the sole sales rights of a machine called a Tape machine recently developed by him and not as yet bearing a Patent Number, the said Andrew R. Ridderstrom agrees to assign to the Adhesive Products Co., in consideration of 49 shares of the Capital Stock of Adhesive Products Co., said rights upon receipt of Patent Number."

On the above facts the master found as follows: "At the outset the defendants contended that the so called agreement was void and of no effect because, first, it was based on a past consideration, and second, for uncertainty. The instrument itself, which was not under seal, recites that Ridderstrom's agreement was 'in consideration of 49 shares of stock.' It was undisputed that the 49 shares referred to were those delivered to him in July, and in that sense the consideration was undoubtedly a past one. On the other hand the agreement was executed in pursuance of a clear understanding existing between the parties from the time of the organization of the company. Ridderstrom was one of its four organizers, and his part was to be the development of a machine. He received his consideration in July, when it appeared that he was in process of performing his part of the arrangement. The execution of the instrument was merely the final act in a series of events beginning even prior to the formation of the corporation." The master further states that: "In view of all the circumstances I rule, so far as it is in my province, that the contract was valid."

The defendants' exception number one in the light of the history of the case was sustained rightly, because it cannot be said with any degree of certainty that the plaintiff and the defendants should have interpreted the contract to mean that Ridderstrom should assign the sole sales rights in the machine when a patent application number was allotted to him, as the plaintiff contends should have been done; or that Ridderstrom should assign the sole sales rights in the machine to the plaintiff when a final patent number was received on the application of Ridderstrom for a patent of the machine, as the defendants contend. The uncertainty of the time of performance of

the contract, which cannot be made certain by a construction of the words of the contract in the light of all the circumstances which were known to the parties when it was executed, was fatal, and left the instrument which was attempted to be executed void. *Knowles* v. *Griswold*, 252 Mass. 172, 175. *Bernstein* v. *W. B. Manuf. Co.* 238 Mass. 589.

It is unnecessary to consider whether the attempted contract was supported by a continuing obligation which Ridderstrom assumed with the organization of the corporation, or whether it was supported by the surrender of Ridderstrom's agreement to furnish the machine in consideration of his agreement to assign the sole sales rights to the plaintiff, the time of such assignment being fixed, or whether the consideration was a past consideration as the defendants contend. It is also unnecessary to consider the other exceptions of the defendants, which were sustained by the court.

*Decree affirmed with costs.*