CAROLYN B. PHELPS vs. SHAWPRINT, INC., & others.

Middlesex. November 6, 1951. — February 1, 1952.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Contract*, Validity, For instalment payments, Performance and breach. *Damages*, For breach of contract. *Pleading, Civil*, Declaration. *Practice, Civil*, Variance, Parties.

A promise, that if the promisee should bring about a sale to the promisor of shares of a certain corporation, the promisor would pay the promisee a specified amount monthly so long as the promisor should be connected with the corporation, was sufficiently definite and certain to permit the promisee, after having performed by bringing about such sale, to recover from the promisor in an action such of the monthly amounts as were due and unpaid at the commencement thereof.

A declaration in an action of contract alleging a promise by the defendant to pay the plaintiff $100 monthly and a failure to pay the monthly instalments after a stated time, "wherefore the plaintiff claims damages in the sum of" $1,200, was sufficient to permit recovery of twelve instalments shown by the evidence to have been due and unpaid at the commencement of the action.

The fact that the declaration in an action against several persons on a contract alleged that all of them jointly and severally made the contract with the plaintiff, while the evidence showed that only two of them made it with him, did not preclude recovery against the two.

CONTRACT OR TORT. Writ in the Superior Court dated July 29, 1948.

The action was tried before *Rome*, J.

*J. W. Vaughan*, for the plaintiff.

*S. Berkman*, for the defendants.

RONAN, J. This is an action of contract or tort, brought in the first count against Felix Rosenbaum, Solomon Rosenbaum, and Harold Ryan, and in the second count against Shawprint, Inc., to recover damages for the breach of a contract alleged to have been made between the plaintiff and the defendants by which they promised and agreed to pay the plaintiff $100 monthly, so long as the Rosenbaums should be connected with the corporate defendant, if she

succeeded in having the Rosenbaums acquire certain shares of the capital stock of the defendant corporation. The declaration contained only these two counts. The judge at the close of the plaintiff's evidence and subject to her exception directed verdicts for all the defendants.

The jury could find that the plaintiff's husband owned at the time of his death a large number of the shares of stock of Shawprint, Inc., and that her mother-in-law owned other shares of this stock. Her husband's shares were held by a Boston bank as trustee. These shares and those held by the mother-in-law constituted a majority of the outstanding shares. The Rosenbaums were anxious to acquire a controlling interest in the corporation and promised to pay the plaintiff $100 a month, so long as they should be connected with the defendant corporation, if she should succeed in having the bank and her mother-in-law sell their shares to them. She brought about these sales and the stock was transferred equally to the Rosenbaums in December, 1945. Eventually the Rosenbaums became directors and one of them became the treasurer. The plaintiff was thereafter paid $100 a month ending with the July, 1947, payment. She has since received nothing. The corporation made no contract with the plaintiff. Neither did Ryan, who seems to have acted only in the capacity of a messenger for the Rosenbaums.

The declaration alleged that "beginning on the first day of January, 1946, and down through July of 1947, the defendants . . . regularly each month, paid to the plaintiff, the sum of One Hundred ($100) Dollars monthly, and since that time, the defendants . . . have ceased to continue payments to the plaintiff . . . ." "Wherefore the plaintiff claims damages in the sum of Fifty Thousand ($50,000) Dollars." Before the trial commenced, the judge advised counsel that the contract was too indefinite and uncertain to maintain the action and that he would be required to direct verdicts for the defendants but that, if the plaintiff's counsel amended his declaration by basing his cause of ac-

tion upon the monthly payments due and payable up to the date of the writ, he would allow such an amendment. Upon the assurance of counsel for the plaintiff that he would file such an amendment, the judge permitted the trial to open and proceed until the plaintiff rested. Counsel for the plaintiff filed a motion to amend the declaration by substituting $1,200 for $50,000 wherever the latter appeared in the declaration. The judge allowed the motion. He then directed verdicts for all defendants.

The main contention of the defendants is that there was not sufficient evidence to warrant the assessment of damages for a total breach of the alleged promise of any of the defendants to pay so long as any of them were connected with the business of the corporation. They also contend that there was a variance between the pleadings and the evidence; that the evidence was insufficient to warrant a verdict against the corporation or Ryan; and that the evidence did not identify the defendants Rosenbaum as the Rosenbaums with whom the plaintiff dealt. We confine our discussion to these contentions.

There is nothing in the contention that the defendants Rosenbaum were not the same persons who contracted with the plaintiff. We have already said that neither the corporation nor Ryan was a party to any contract with the plaintiff. The question of variance will be presently discussed.

This brings us to the defendants' principal contention and evidently the point the judge had in mind when he suggested an amendment to the declaration.

The contract, while single and entire, called for continuous performances upon the part of the Rosenbaums over a period of time, the expiration date of which cannot be presently determined. The contract was not silent on this aspect for it carried its own measure of time. It definitely specified that it was to continue so long as the Rosenbaums were connected with the corporation. Such a contract is not too indefinite or uncertain to be enforceable at least for partial breaches even though it is impossible to predict precisely

when the contingency will occur that will bring the contract to an end. Contracts for permanent employment have been construed to mean to last so long as the employer continued in business and had work for the plaintiff to do and so long as he was satisfactorily able to do it. *Carnig* v. *Carr,* 167 Mass. 544. *Daniell* v. *Boston & Maine Railroad,* 184 Mass. 337. *Weiner* v. *Pictorial Paper Package Corp.* 303 Mass. 123. Doubtless, such a contract will terminate if the employer in good faith quits the business; in other words, he is liable only so long as he conducts the business even if the employee is able and willing to perform his duties. *Revere* v. *Boston Copper Co.* 15 Pick. 351. *Kirkley* v. *F. H. Roberts Co.* 268 Mass. 246, 252. Contracts to continue, not until a fixed date but until the happening of an event which is certain to occur sooner or later, have been enforced. Contracts for support for life have been held not to be void because of being indefinite and uncertain, as the probable period of their duration can be supplied by mortality tables. *Amos* v. *Oakley,* 131 Mass. 413. *Parker* v. *Russell,* 133 Mass. 74. Where, as here, the contract has been fully performed on one side, "the law will not permit the injustice of the other party retaining the benefit without paying unless compelled by some inexorable rule." *Silver* v. *Graves,* 210 Mass. 26, 30. A contract to furnish water while the consumer occupied a certain dwelling, *Brown* v. *Birmingham Water Works Co.* 169 Ala. 230; a contract of employment until certain shares of stock had paid dividends sufficient to pay certain notes, *Wittmann* v. *Whittingham,* 85 Cal. App. 140; a contract for an exclusive agency so long as a druggist kept the company's products in stock and sold at the full list price, *Long Beach Drug Co.* v. *United Drug Co.* 13 Cal. (2d) 158, 165; an employment contract so long as the employer continued in business and the employee held fifty shares of its capital stock, *McMullan* v. *Dickinson Co.* 63 Minn. 405; a contract to employ so long as the employer maintained a certain plant, *Carter White Lead Co.* v. *Kinlin,* 47 Neb. 409; a contract to supply the plaintiff with gloves so long as the defendant manufactured them, *Jugla* v.

*Trouttet,* 120 N. Y. 21; a contract to supply a bread pedler with all the bread he required while both parties continued in business, *Ehrenworth* v. *George F. Stuhmer & Co. Inc.* 229 N. Y. 210; a contract to pay compensation so long as the plaintiff refused to sell the newspapers of a competing company, *Rague* v. *New York Evening Journal Publishing Co.* 164 App. Div. (N. Y.) 126; a contract to employ one while his ideas were used in manufacturing radiators, *Cammack* v. *J. B. Slattery & Bro. Inc.* 209 App. Div. (N. Y.) 877; a contract by an automobile bus company to purchase all the gasoline that it needed from the proprietor of a gasoline station so long as he continued in the business of selling gasoline and held shares of stock of the bus company, *Fuchs* v. *United Motor Stage Co. Inc.* 135 Ohio St. 509; a contract by a telephone company to furnish service free to municipal offices so long as it operated a telephone system in the city, *Superior* v. *Douglas County Telephone Co.* 141 Wis. 363; a contract to furnish steam while the plaintiff occupied certain premises, *American Steam Laundry Co.* v. *Riverside Printing Co.* 171 Wis. 644; and a contract of employment so long as the defendant might be engaged in the construction of a bridge at Manila, *Prescott* v. *Puget Sound Bridge & Dredging Co.* 31 Wash. 177, have all been enforced against a contention that they were void for indefiniteness and uncertainty.

A contingent liability for the payment of an instalment becomes absolute when the event fixed by the contract for its payment occurs. In *Dunbar* v. *Dunbar,* 180 Mass. 170, a man who agreed with his divorced wife to pay her an annual sum in monthly instalments during her life or until she remarried was found liable for the instalments due at the time she brought an action to collect them notwithstanding his contention that she was barred by his discharge in bankruptcy. On writ of error to the Supreme Court of the United States, *Dunbar* v. *Dunbar,* 190 U. S. 340, it was pointed out that the contract was not dependent upon the life of the wife alone but it was to end upon her remarriage. "Such a contingency is not one which in our opinion is

within the purview of the [bankruptcy] act, because of the innate difficulty, if not impossibility, of estimating or valuing the particular contingency of widowhood" (page 345). The man's liability upon the contract could not be proved as a contingent liability under § 63a of the bankruptcy act of 1898 as that section did not apply to liabilities "the valuation or estimation of which it was substantially impossible to prove" (page 350). The defendant was held liable for the payments due and payable although no one could precisely foresee how long he would be required to make such payments.

In *Raymond* v. *White*, 119 Mich. 438, the defendants agreed to pay the plaintiff a stated sum each week so long as they used his patented devices. The contract fixed no definite time for its duration. The defendants were bound to pay in accordance with the contract so long as they used the plaintiff's devices. The plaintiff recovered a weekly payment due and unpaid at the time he brought his action.

The instant contract was fully executed upon the part of the plaintiff and the only portion remaining executory was that imposed upon the Rosenbaums. Their failure to make the stipulated payments constituted successive breaches of the contract. While the obligation to make them arose out of the same contract, the payments were to be separate and independent of each other and were not otherwise connected except as to their origin. The contract did not call for the acceleration of payments in the event of a default in the payment of the instalments. *Burroughs Adding Machine Co.* v. *Proprietors of the Cemetery of Mt. Auburn*, 217 Mass. 378. The failure to make these payments constituted partial breaches of the contract. Restatement: Contracts, § 316. The plaintiff could bring an action for all the instalments due and recover the damages caused by these breaches. The practice of bringing successive actions for unpaid but due instalments has become general especially in this Commonwealth from an early date when an action of assumpsit in such instances superseded an action for debt. *Heywood*

v. *Perrin,* 10 Pick. 228. *Badger* v. *Titcomb,* 15 Pick. 409, 414. *Perry* v. *Harrington,* 2 Met. 368. Compare *Peirce* v. *Woodward,* 6 Pick. 206. See *McLaughlin* v. *Levenbaum,* 248 Mass. 170, 175; *Watson* v. *Berman,* 302 Mass. 305.

The only breaches alleged and relied upon at the trial were the failure to pay the monthly instalments since July, 1947. The only damages the plaintiff sought at the close of the evidence were for these unpaid instalments. Counsel thought in offering the amendment that he was adopting the suggestions of the judge and merely claiming the amount due for the unpaid instalments. He had abandoned any claim that the failure to pay the monthly instalments as required by the contract gave the plaintiff the right to recover for an entire breach.[1] The amendment to the declaration which was then allowed expressly limited the damages to $1,200 which was for the twelve instalments which she claimed were due at the commencement of the action. So far as appears she was then making no other claim. If this claim was established, she was entitled to recover for the amount of the unpaid instalments, even if the declaration did not set out definitely and specifically the particular instalments which were due, although it would have been better practice to have done so, together with an allegation that the defendants owed the amounts of these instalments. Even where the pleadings have been cast in a form more or less similar to those in the instant case and where it has appeared that the evidence was not sufficient to support a claim for damages for an entire breach, damages have been awarded for a partial breach. We are of opinion that the plaintiff was entitled to recover such instalments as she proved were due and unpaid prior to the date of the writ. *Tucker* v. *Randall,* 2 Mass. 283. *Cooley* v. *Rose,* 3 Mass. 221. *Powers* v. *Ware,* 4 Pick. 106. *Heywood* v. *Perrin,* 10

[1] See *Roehm* v. *Horst,* 178 U. S. 1; *Central Trust Co.* v. *Chicago Auditorium Association,* 240 U. S. 581; *New York Life Ins. Co.* v. *Viglas,* 297 U. S. 672, 682; *Moore* v. *Security Trust & Life Ins. Co.* 168 Fed. 496; *Brimmer* v. *Union Oil Co. of California,* 81 Fed. (2d) 437; *Hawkinson* v. *Johnston,* 122 Fed. (2d) 724; *Brown Paper Mill Co.* v. *Irvin,* 146 Fed. (2d) 232; *Manufacturers' Furniture Co.* v. *Reed,* 172 Ark. 642; *Cobb* v. *Pacific Mutual Life Ins. Co.* 4 Cal. (2d) 565; *Sagamore Corp.* v. *Willcutt,* 120 Conn. 315.

Pick. 228, 231. *Knight* v. *New England Worsted Co.* 2 Cush. 271, 289. *Warner* v. *Bacon,* 8 Gray, 397, 401.

The declaration alleged that all the individual defendants jointly and severally made the contract with the plaintiff while the evidence tended to show that, if there was any contract, it was made with only the Rosenbaums. Hence it is contended that there was a variance and that, the action of the judge being based upon the pleadings, the variance was sufficient to support the granting of the motion for directed verdicts. This general principle has been frequently applied. *Ferris* v. *Boston & Maine Railroad,* 291 Mass. 529. *Puro* v. *Heikkinen,* 316 Mass. 262, 266. In an action against two or more defendants judgment may be rendered against those found to be liable although it is found that not all of the defendants are liable. *Taft* v. *Church,* 162 Mass. 527, 533. G. L. (Ter. Ed.) c. 235, § 6. The fact that the evidence tended to show that a joint and several contract was made with some but not with all of the defendants ought not to allow those who were parties to escape liability because it turns out that there was a technical misdescription of the contract with reference to the parties. There is a tendency to soften the rigors and inflexible rules of common law pleading when this can be done in the interests of justice and without injury to any substantial rights of the parties. For instance, nonjoinder of parties in an action of contract cannot be made the basis for a directed verdict on the ground of variance; the point must be raised by a plea in abatement furnishing the names of the other parties. This is an established rule of practice. *Dillon* v. *Barnard, ante,* 53. Misjoinder of the parties in an action of contract does not bar the maintenance of the action by virtue of G. L. (Ter. Ed.) c. 231, § 4A, inserted by St. 1943, c. 350, § 1, which provides for the joinder in one action of two or more persons as parties defendant "if there is asserted against them jointly, severally, or in the alternative, any right to recover in respect of or arising out of the same matter, transaction, [or] occurrence . . . . Judgment may be given . . . against one or more of the defendants according to their respective

liabilities . . . . Misjoinder of parties shall not be ground for the dismissal of the action."

It follows that the plaintiff's exceptions are sustained to the granting of the motion to direct verdicts in favor of the Rosenbaums and are overruled to the direction of verdicts for the other defendants.

*So ordered.*