RALPH E. LIVINGSTON *vs.* GEORGE MCARTHUR AND SONS, INC.

Suffolk.   October 5, 1954. — December 21, 1954.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Broker*, Commission. *Contract*, What constitutes.

A letter stating "this year all sales . . . are being handled by" a New York firm, written without bad faith in January to a broker by a manufacturer who had offered in March of the preceding year to pay the broker an agreed commission upon sales of hammocks, was an adequate revocation of the broker's authority to sell and he was not entitled to commissions on sales thereafter made by the manufacturer to one whom the broker had been seeking to interest in purchasing the hammocks before the revocation.

CONTRACT.   Writ in the Municipal Court of the City of Boston dated March 27, 1953.

Upon removal to the Superior Court, the action was tried before *Beaudreau,* J.

*Edward C. Park,* for the defendant.

*Erland B. Cook,* for the plaintiff.

WILLIAMS, J.  This is an action of contract to recover a broker's commission alleged to be due the plaintiff on the sale of hammocks to Jordan Marsh Company.  The case is here, after a verdict for the plaintiff, on the defendant's exception to the denial of its motion for a directed verdict.

The plaintiff is known as a manufacturer's representative and operates as an independent broker for different companies on a commission basis.  In March, 1949, he was employed by one McArthur, the sales manager of McKinley Corporation of Baraboo, Wisconsin, to sell hammocks on commission for that corporation.  It was stipulated at the trial that the defendant "had succeeded to the assets and liabilities of McKinley Corporation, and that if that corporation was liable to the plaintiff upon the evidence presented, a recovery might be had against the defendant." It was also agreed that in 1949 McArthur was sales manager of McKinley Corporation; that "his authority as such extended to employing manufacturer's representatives to sell hammocks in New England and to fixing their terms of employment"; and that in fact he did employ the plaintiff and agreed to pay him a commission.

There was evidence that following a talk with McArthur in March, 1949, at which the plaintiff's commission was fixed at ten per cent on the sales he would make in the New England territory, he was given samples of hammock fabric and some price lists.  Thereafter he interviewed buyers for Jordan Marsh, with whom he was personally friendly and to whom previously he had made sales of other lines of merchandise.  No sales were made by him to Jordan Marsh in 1949 other than one hammock, which seems to have been purchased as a sample and for which the plaintiff claims no commission.  He called on the Jordan Marsh buyers at intervals through 1949, and in January, 1950, arranged with one Hoye, the general merchandise manager

of home furnishings for Jordan Marsh, to meet McArthur at a furniture show in Chicago. Hoye and McArthur discussed prices and styles but came to no understanding as to the terms on which Jordan Marsh would purchase hammocks. On January 26 McArthur submitted a bid in writing to a representative of Allied Stores, a corporation of which Jordan Marsh is a subsidiary. On February 13 Jordan Marsh placed an order with McKinley Corporation for two lots of special hammocks at a price of $14,650. During the year 1950 Jordan Marsh paid McKinley Corporation a total amount of $22,007 for hammocks.

On December 19, 1949, the plaintiff had written McArthur asking "about the line, price changes, etc." On January 9, 1950, he again wrote, informing McArthur that Hoye was going on a midwestern trip and stating that "What Jordan's wants again this year is a hammock to sell for $10 — they don't want to pay more than $6 for hammock and stand. They're supposedly in the market for 5,000 hammocks. . . . I would like an answer to my letter of Dec. 19, as well as information on new prices, styles, etc." On January 14 McArthur sent to the plaintiff the following letter: "I feel very bad about not answering your two letters sooner. . . . This year all sales east of Pittsburgh are being handled by Sig. Jacobs and Co. of 35-37 West 23rd Street, New York, N.Y. This firm is absolutely tops in the representation of summer furniture to furniture and department stores in the east and they are putting SWING-TIME over for us in a large way. Since they cover all of the eastern states we are sending them copies of your letters. In talking with them last evening (this is being written from Chicago) they told me that they have a man in New England at present. They will contact you when they get back to New York after the furniture and housewares shows. . . ." The plaintiff replied on January 18, "Thank you for your letter of Jan. 14th. Of course, word of your new agents covering all of the Eastern states is news to me. I do believe, however, I should have been informed of this arrangement prior to the beginning of the New Year. I have spent a good deal

of time trying to get things rolling at Jordan's and believe I deserve credit, if a sales is consummated." McArthur wrote back on February 1 that a $6 hammock "was not in the picture" so far as they were concerned; that he did not know whether they were going to sell Allied Stores (Jordan's) any merchandise that year but they had made a bid. On February 28 the plaintiff wrote that choosing a New York representative was McArthur's "prerogative" but that he felt that he was entitled to some consideration. He said that he had learned from Hoye that he had placed an order for about $12,000 and that "I believe this sale is reflected in efforts begun last Spring — I sincerely think this planted a seed."

When McArthur's letter of January 14 was received by the plaintiff he had no existing contract with McKinley Corporation. He had received through McArthur merely an offer which would ripen into a contract only when he performed in accordance with its terms, that is, when he sold hammocks. This offer, being indefinite as to time, was revocable at the will of the offeror. *Globe Paper Co. Inc.* v. *Russell Box Co.* 291 Mass. 1, 10. We think that the letter of January 14 must be deemed to have been an adequate revocation of the plaintiff's authority to act as selling agent for McKinley Corporation. See *Des Rivieres* v. *Sullivan,* 247 Mass. 443, 448; *Brooks* v. *Gregory,* 285 Mass. 197, 205. Compare *Davol* v. *Quimby,* 11 Allen, 208. The statement therein contained, that for the year 1950 Sig. Jacobs and Co. would handle all sales east of Pittsburgh, amounted to notice to the plaintiff that during 1950 he was not authorized to handle sales. It is apparent that the plaintiff understood this to be the intent of the letter. He testified that "When I received this letter, I did not feel Jacobs was in and I was out. I felt that is what the manufacturer thought but I didn't feel that way about it." In his reply on January 18 he referred to "your new agents" and later on February 28 wrote, "I have no argument with you upon your choosing a New York representative — that, of course, is your prerogative."

The plaintiff, however, contends that, if his authority be held to have been revoked on the receipt of the January 14 letter, a jury could have found that he was entitled to recover commissions on the sales made after that date because effected as a result of his previous efforts. See *John T. Burns & Sons Inc.* v. *Hands*, 283 Mass. 420, 423. He relies on the rule stated in *Johnstone* v. *Cochrane*, 231 Mass. 472, 478, that "a broker earns a commission where he brings the property which he is employed to sell to the attention of a third person and then turns that person over to his employer and the property is sold as the result of negotiations so begun between the two." This rule, however, is subject to qualification where a revocation has intervened. Barring bad faith "Until a contract comes into existence the owner can withdraw the offer; and although the broker may have incurred expense, have been put to trouble and have spent time and energy in the effort to fulfil the conditions of the offer, he has no claim for compensation." *Elliott* v. *Kazajian*, 255 Mass. 459, 461–462. This principle is applicable although the seller to some extent may be said to have availed himself of the fruits of the broker's labor (*Cadigan* v. *Crabtree*, 186 Mass. 7, 13) and although the revocation occurs in the midst of negotiations with a "possible or probable purchaser." *Pagum* v. *White*, 259 Mass. 437, 439.

There is no contention in the present case that McArthur acted in bad faith. As the plaintiff had not effected a sale at the time his authority was revoked he cannot recover a commission. The motion for a directed verdict should have been allowed.

*Exceptions sustained.*
*Judgment for the defendant.*