SAMUEL SIMONS *vs.* AMERICAN DRY GINGER ALE CO. INC.

Suffolk.    January 8, 1957. — March 5, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Contract,* Validity, Construction, Modification, Consideration, Waiver.
*Waiver.*

Evidence of a conversation between an owner of bottle cases and a re-
pairer thereof, who had previously had dealings together, warranted
a finding that they made an oral contract, sufficiently definite to be
enforceable, that the owner would furnish for repair, and the repairer
would repair, a certain minimum number of cases per week at a stated
amount per case, even though, in the absence of any specified duration
of the contract, it were construed as terminable at the will of either
party upon reasonable notice.   [524–525]

Continued performance by one of a contract, which he could have termi-
nated at will on reasonable notice, to repair bottle cases for their
owner was consideration for a modification of the contract whereby an
amount per case payable by the owner to him was increased.   [526]

A finding that a repairer who had a contract with an owner of bottle cases
to repair a certain minimum number of the cases weekly waived full
performance by the owner was not required by evidence of the re-
pairer's conduct over a considerable period in which the owner in most
weeks failed to furnish the specified minimum number of cases for
repair.   [526–527]

CONTRACT.   Writ in the Superior Court dated April 11,
1955.

At the trial before *Goldberg, J.,* there were verdicts for the
plaintiff.   The defendant alleged exceptions.

*Julius H. Soble,* for the defendant.

*Charles F. Nayor,* for the plaintiff.

CUTTER, J.   The plaintiff in 1948 was connected with a
firm which repaired bottle cases for the defendant, and
thereafter set up his own shop to do this work, which kept
him and two men working steadily.   There was a decrease
in the shipment of cases to the plaintiff for repair and the
plaintiff complained to one Soble, president of the defend-

ant. Soble urged the plaintiff to continue and assured him that business would increase. Thereafter a continuing low level of shipments caused the plaintiff to inform Soble that he would have to close his shop. Soble, in a letter to the plaintiff on April 2, 1951, suggesting a conference, said, "Bearing in mind . . . that we will require a minimum of four hundred cases per week, please have details on what we will have to furnish you for this operation."

There was conflicting evidence upon which the following further facts could be found. On April 7, 1951, the plaintiff and Soble conferred. Soble said "the defendant corporation would furnish . . . a minimum of four hundred cases per week and would pay . . . thirty-five cents per case plus materials." The plaintiff "accepted Mr. Soble's proposition" and told Soble that he appreciated "the offer of getting four hundred cases a week" and "that he would agree to the handling of four hundred . . . cases per week." The agreement of April 7, 1951, "specified no duration."

There were very few instances in which the defendant sent as many as four hundred cases, so in late April, 1951, the plaintiff took a job in the navy yard where he has continued to work. He remained, however, at all times equipped to handle four hundred cases per week. He billed the defendant for the repaired cases which it picked up but not for four hundred cases per week. Although he did not write to Soble about the alleged breach of the contract to provide four hundred cases per week, because he did not wish to antagonize the defendant, the plaintiff did speak to Soble on several occasions about not receiving four hundred cases per week. Also in January, 1952, and again in March, 1952, the plaintiff requested an increase of ten cents per case for doing the work and in March, 1952, the defendant did agree to an increase in price per case from thirty-five cents to forty cents. The plaintiff testified that he "figured his profits per case was everything over twenty-five cents per case" and that the "cases picked up and paid for by the defendant were as contained in the account annexed to his declaration."

The plaintiff brought this action of contract in three counts. Count 1, the only count here involved, alleged a breach of the contract described above in the failure of the defendant to furnish four hundred cases for repair each week. The defendant filed a motion for a directed verdict, which was denied. The defendant also requested rulings (a) that the alleged contract was unenforceable, and (b) that the plaintiff "by his conduct and inaction waived performance of the alleged contract . . . and cannot recover." These requested rulings were denied. Exceptions were duly saved. There were verdicts for the plaintiff on all three counts. The case is here on the defendant's bill of exceptions.

The motion for a directed verdict was properly denied if the evidence would warrant the recovery of even nominal damages for breach of contract. *Lane* v. *Epinard,* 318 Mass. 664, 667. The issues, accordingly, are, in substance, those raised by the requests for rulings: (1) Was there evidence which would warrant the jury in finding that an enforceable contract existed? (2) Did the evidence require a finding that the plaintiff waived performance by the defendant? If the evidence required the jury to find that there was no enforceable contract, or that there was a waiver by the plaintiff of all performance, the motion for a directed verdict should have been granted.

1. All the essential terms of a contract must be sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained. *Caggiano* v. *Marchegiano,* 327 Mass. 574, 579. However, a contract is not to be held unenforceable "if, when applied to the transaction and construed in the light of the attending circumstances," the meaning can be ascertained with reasonable certainty. *Cygan* v. *Megathlin,* 326 Mass. 732, 734, and cases cited. See Restatement: Contracts, § 235 (d), comments e and f.

The jury have believed the testimony of the plaintiff rather than the denials of that testimony by the defendant's president. Even upon this testimony the defendant contends that the contract in the present case is so uncertain and

incomplete as to be unenforceable. We think that this is not a case where "the promise given and relied on was so vague that it can be given no effect." *Weiner* v. *Pictorial Paper Package Corp.* 303 Mass. 123, 131–132.

The parties had been engaged in dealings with each other over a considerable period of time. The performance required of the plaintiff, the repair of cases to hold soft drink bottles, was simple compared to a more complicated contractual relationship like that discussed in *Geo. W. Wilcox, Inc.* v. *Shell Eastern Petroleum Products, Inc.* 283 Mass. 383, 387–391, and called for no special explanation in a contract. Presumably, the previous dealings of the parties had set up a customary routine of deliveries, time for performance, credit terms, and other incidental details, with reference to which the parties dealt with each other.

Price (leaving aside, for the moment, considerations of the increase from thirty-five cents to forty cents per case discussed below) was at all times certain. The plaintiff stated that he told Soble "he would agree to the handling of four hundred . . . cases per week." On this testimony the jury could have found that this was the agreed weekly volume, or at least that this evidence coupled with the discussion relating to a "minimum of four hundred cases per week" meant that the parties were agreeing on a volume of approximately four hundred cases per week (allowing for a reasonable amount more in some weeks), with that figure as a minimum. Such an arrangement is not too indefinite to be enforced. *Nickel* v. *Zeitz,* 258 Mass. 282, 284–286. *Muir Brothers Co.* v. *Sawyer Construction Co.* 328 Mass. 413, 415–416, and cases cited. Compare *Gill* v. *Richmond Co-operative Association, Inc.* 309 Mass. 73, 79–80.

The plaintiff testified that the agreement "specified no duration." This fact does not render the contract fatally uncertain. The contract might fairly be construed as one "terminable at will by either party upon reasonable notice." *Phoenix Spring Beverage Co.* v. *Harvard Brewing Co.* 312 Mass. 501, 506–507, and cases cited. See *Phelps* v. *Shawprint, Inc.* 328 Mass. 352, 354–357. Compare *Livingston* v.

*George McArthur & Sons, Inc.* 332 Mass. 83, 86. Here there is nothing in the record to indicate any termination by the defendant in the period (the extent of which is not clear from the record) during which the plaintiff remained ready to perform or for which recovery is sought. Even if the contract is construed as terminable at will for the future by either party on reasonable notice (see *Emerson* v. *Ackerman,* 233 Mass. 249, 252; *Phoenix Spring Beverage Co.* v. *Harvard Brewing Co.* 312 Mass. 501, 506–507), that does not necessarily make the contract illusory and unenforceable with respect to any period prior to such a termination. The jury were entitled to regard this as a bilateral contract effective at least until the expiration of a reasonable period following notice of termination. This is not a case (compare *Gill* v. *Richmond Co-operative Association, Inc.* 309 Mass. 73, 79–80, and cases cited) where the parties bound themselves to nothing, for they could be found to have bound themselves (the plaintiff to keep ready to perform and the defendant to carry out the offer and undertaking to supply work) in any event for a reasonable time. *Babikian* v. *Brown,* 293 Mass. 195, 199. *Lane* v. *Epinard,* 318 Mass. 664, 667, and cases cited. See also *Starkweather* v. *Gleason,* 221 Mass. 552, 553–554; *Sylvan Crest Sand & Gravel Co.* v. *United States,* 150 Fed. (2d) 642, 643–645 (C. C. A. 2). See also general discussion in Williston, Contracts (Rev. ed.) §§ 38–40; Corbin, Contracts, § 96.

It could reasonably be found that the plaintiff, by repairing all the boxes sent to him each week and by being "at all times equipped to handle the four hundred cases per week," had fully performed his part of the contract, except to the extent that he had been prevented from performing by the defendant's failure in any week to send him the full quota of four hundred boxes for repair, as required by the terms of the defendant's continuing, unterminated oral undertaking. The plaintiff was thus entitled to recover at least for all the past partial breaches of contract, which occurred before the effective date of any reasonable notice by the defendant of termination for the

future.   See *Phelps* v. *Shawprint, Inc.* 328 Mass. 352, at pages 357–358.   This is not a case where the plaintiff seeks enforcement of the contract for any period following the effective date of a reasonable notice of termination.   Compare *Miami Coca-Cola Bottling Co.* v. *Orange Crush Co.* 296 Fed. 693 (C. C. A. 5).

The fact that the price was changed by mutual agreement does not as a matter of law require a finding that the terms of the arrangement with respect to price were abandoned.   There was adequate consideration for a new price in the fact that the plaintiff continued to perform and to undertake to perform a contract which he could have terminated.   See *Swartz* v. *Lieberman,* 323 Mass. 109, 112; *L. W. Severance & Sons, Inc.* v. *Angley,* 332 Mass. 432, 436–438.

We have examined various cases relied on by the defendant as precedents for holding the contract here involved to be fatally uncertain.   *Bernstein* v. *W. B. Manuf. Co.* 238 Mass. 589, 591 (order subject to cancellation at will of one party held not to be a binding contract).   *Knowles* v. *Griswold,* 252 Mass. 172, 174–175 (contract for sale of real estate subject to substantial variation by a public board held to be too uncertain to enforce).   *Adhesive Products Co.* v. *Ridderstrom,* 270 Mass. 485, 489–490 (time for assignment of patent application rights left wholly uncertain as between two possible dates).   They are cases in which nothing in the circumstances tended to show that the parties had both become bound by an adequately certain contract and are distinguishable from the present case, where, as already indicated, the jury were warranted in finding the terms of a simple oral contract from the testimony and the attendant circumstances.

2. The evidence did not require a finding of waiver, or an agreement by the plaintiff to accept a substituted performance on the part of the defendant.   See Williston, Contracts (Rev. ed.) §§ 678–682; see also *General Foods Corp.* v. *The Felipe Camarao,* 172 Fed. (2d) 131, 133–134 (C. A. 2), certiorari denied sub nomine *Republic of the*

*United States of Brazil* v. *General Foods Corp.* 337 U. S. 908.
Even if these issues are open for consideration, where, as
here, waiver was not pleaded as an affirmative defence
(compare *Mark* v. *Stuart-Howland Co.* 226 Mass. 35, 41–42,
requiring pleading of abandonment or recission as affirma-
tive defences; compare also *Watkins* v. *Simplex Time
Recorder Co.* 316 Mass. 217, 222–223), on the conflicting
testimony of the plaintiff and of Soble, it could reasonably
have been found by the jury that the plaintiff (a) never
relinquished, by conduct or otherwise, his claim to be
entitled to a minimum of four hundred cases per week;
and (b) never accepted the volume of business actually sent
to him by the defendant as full satisfaction of the defend-
ant's obligation. *Garfield & Proctor Coal Co.* v. *Fitchburg
Railroad,* 166 Mass. 119, 123. *Boyden* v. *Hill,* 198 Mass.
477, 485–486. See *Doujotos* v. *Leventhal,* 271 Mass. 280,
282–283. Compare *Metropolitan Transit Authority* v. *Rail-
way Express Agency, Inc.* 323 Mass. 707, 709.

3. Since the jury could reasonably have found that there
was an enforceable contract, that breaches of the contract
by the defendant caused at least nominal damages, and
that there was no waiver of full performance or acceptance
by the plaintiff of a lesser performance on the part of the
defendant, the defendant's motion for a directed verdict
and requests for rulings were properly denied.

*Exceptions overruled.*