King, J.
INTRODUCTION
The plaintiffs commenced this action to recover damages after plaintiff Thomas Saccoach crushed his thumb during a construction accident on January 25, 1995. Before the court are two motions for summary judgment brought by third-parly defendant, Babcock & Wilcox Construction Co., Inc. (Babcock). Babcock was brought into this action by defendants and third-party plaintiffs Custodis-Cottrell, Inc. (Custodis) and S.G. Marino Crane Corp. (Marino). Marino and Custodis each impleaded Babcock for a claim of contribution and indemnity in plaintiffs’ action against them. After hearing and considering the arguments of counsel, the court makes the following rulings.
BACKGROUND
Except as noted, the following material facts are not disputed. In January 1995, Babcock, Marino and Custodis were all working on a construction job at New England Power Co. at the Brayton Point project site in Somerset, Massachusetts. Thomas Saccoach (Mr. Saccoach) was employed by Babcock as a boilermaker.
On or before January 25, 1995, Babcock leased a 4100 W Manitowac crawler crane (tower crane) from Marino. The tower crane was delivered unassembled, on or before January 25, 1995, by Marino to the job site on flatbed trucks.
Custodis and Babcock used a number of different cranes at the job site. On occasion they would use each others cranes and would pay the other for the use of the crane and the crane operator.
On January 25, 1995, Custodis’ 35 ton crane (cherry picker crane) and operator (John Duane) were being used by Babcock to assemble and erect Babcock’s leased tower crane and to stack flatbed trailers, used to deliver the tower crane, for the return trip to Marino. Mr. Probus, a Marino employee, was directing the operation of the cherry picker crane by means of hand signals as the flatbed trailers were being stacked. The trailers were owned by Marino. Babcock paid Marino for Probus’ services.
Mr. Saccoach’s thumb was injured on January 25, 1995 while he was hooking up the cheriy picker crane’s sling to the rear of a flatbed trailer so that it could be hoisted on top of a second flatbed trailer. There is a dispute whether the accident occurred when the cherry picker crane operator moved the crane boom in response to a signal from Probus.
Babcock and Marino’s lease agreement for the tower crane is dated January 27, 1995, two days after the accident. The relevant clause of the lease is the “Insurance And Liability of Lessee” clause which states, in pertinent part:
Lessee assumes full responsibility for and indemnifies Lessor against and will protect and save Lessor against harm from any and all loss, liability, damage, and expense in connection with any injury or claim of injury of Lessee’s employees and will save Lessor harmless from any and all loss, liability, damage and expense to other persons or any property arising from or in connection with the use or operation of the leased equipment or otherwise in connection therewith . . .
(Emphasis supplied.)
Custodis claims that, prior to the accident, it had a verbal indemnification agreement with Babcock concerning the use of the cherry picker crane. Custodis also claims an undated written indemnity agreement between Custodis and Babcock was in effect at the time of the accident. 'lire undated written indemnity agreement provided, in relevant part, that Babcock:
(1) Agrees to indemnify and hold harmless ResearchCottrell, Inc. from and against all loss, damage, expense or penalty arising from any action or omission on account of any injury to persons or property of any character whatsoever, occasioned by the use, operation, handling or transportation of the equipment,...
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commis *264 sioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550 (1976), 553; Mass.R.Civ.P. 56(c); 365 Mass. 824 (1974). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summaiy judgment by resting on its “pleadings and mere assertions of disputed facts ...” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Establishing the absence of a triable issue requires the nonmoving party to respond by alleging specific facts demonstrating the existence of a genuine issue of material fact. Pederson v. Time, Inc., supra at 17.
1. Babcock’s Lease Agreement With Marino
Marino’s claim is based on its lease agreement with Babcock. Where the court need only interpret a clause in a contract, the action is ripe for a motion for summaiy judgment. See Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). Even assuming that the lease agreement was in effect at the time of the accident, Babcock is entitled to summaiy judgment because the indemnification clause of the lease does not cover the circumstances surrounding the accident. The clause at issue in the lease agreement is the indemnity clause in which Babcock, the lessee, agreed to indemnify Marino. The indemnity clause specifically states that it covers claims or suits for injuries to third persons “arising from or in connection with the use or operation of the leased equipment or otherwise in connection therewith.” The leased equipment was the tower crane. It is undisputed that the tower crane was not in use or operation at the time of the accident. Indeed, the tower crane was not yet even assembled. Assembling and transporting are very different from using and operating. The indemnification clause simply does not cover the stacking of the flatbed trailers used to transport the unassembled tower crane that was the subject of the lease agreement. For this reason, the court will grant summary judgment for Babcock on Marino’s third-party claim.
2. Babcock’s Verbal Agreement With Custodis
Custodis contends that it had an oral indemnity agreement with Babcock. Specifically, that Custodis agreed that Babcock could use Custodis 35-ton cherry picker crane and that Babcock agreed to indemnify Custodis for any losses Custodis sustained arising out of the use of the crane. Mel Fournier, a Custodis employee, stated that he and Paul Smith, a Babcock employee, entered into an oral indemnify agreement. As to the terms of this verbal agreement, Fournier states:
we were responsible for each other one’s actions. If I borrowed a piece of equipment from Paul, that I was responsible for it. If he borrowed from me, that he was responsible for it. . . responsible for whatever — if something happens to the equipment or any buildings or material around it or safely of the individuals while working on it. The same responsibility — as though he had rented a piece of equipment from someone.
Deposition of Mel Fournier at 141. Fournier could not remember the date of the alleged agreement but stated that it was entered into before the accident.
Babcock contends that Custodis has not produced sufficient evidence that an oral indemnification contract existed. The court agrees. In order to be enforceable, an oral contract, just like a written contract, must have ascertainable essential terms. Novel Iron Works, Inc. v. Wexler Construction Co., 26 Mass.App.Ct. 401, 408 (1988) (“There must be agreement on the essential terms of the transaction in order that the nature and extent of the parties’ obligations can be determined and, hence, enforced”). See also Simons v. American Dry Ginger Ale Co., Inc., 335 Mass. 521, 523 (1957) (meaning of oral contract must be ascertainable with reasonable certainty). The alleged discussions between Paul Smith and Mel Fournier relied upon by Custodis are simply too vague to create an enforceable agreement. For this reason, summary judgment will be granted in favor of Babcock on so much of Custodis’ third-party claim as relies on the alleged verbal agreement.
3.Babcock’s Written Indemnity Agreement With Custodis
An undated written indemnification agreement was executed by Custodis and Babcock concerning Babcock’s use of Custodis’ 35-ton cherry picker crane.[1] In this undated indemnification agreement, Babcock agreed to indemnify Custodis for any losses incurred by Custodis while the crane was being used by Babcock.[2] Although this indemnification agreement is not dated, there is evidence that it was signed before the accident in question. Under these circumstances, there is a material issue of fact for the jury which precludes the court from granting summary judgment on this issue. Babcock also argues that the undated agreement is void for lack of consideration. This argument has no support in the record. The consideration involved permitting Babcock to use Custodis’ cherry picker crane. Likewise without support in the record is Babcock’s claim that the cherry picker crane was not being used by Babcock at the time of the accident. There is evidence from which a jury could find that on the day of the accident Custodis’ cheriy picker crane was being used by Babe *265 ock to assemble and erect its tower crane and that Babcock permitted the cherry picker crane to be used to stack Marino’s flatbed trailer.
ORDER
For the foregoing reasons, Babcock’s motion for summary judgment is ALLOWED as to Marino’s third-party claim. Babcock’s motion for summary judgment is ALLOWED as to the oral indemnification agreement. Babcock’s motion for summary judgment as to the written indemnification agreement is DENIED.

There was a second indemnity agreement, dated April 19, 1995, but counsel for Custodis indicated at the hearing that its third-party claim did not rely on this agreement.

The undated indemnification agreement is between Babcock and Research-Cottrell, Inc., a company affiliated with Custodis. A jury could find that the indemnification agreement was designed to benefit Babcock since Babcock’s employee and Custodis’ employee understood the contract as benefiting Babcock.