Fabricant, J.
INTRODUCTION
Plaintiff, Albert A. Vincenzi, brought this action against the executor of the estate of his ex-wife, Alice P. Vincenzi. Albert alleges that he entered into an oral contract with Alice to perform household services in exchange for compensation. Count I seeks recovery of the fair value of these services from her estate. Count II seeks recovery of amounts Albert alleges he paid for Alice’s funeral expenses. This matter is before the court on defendant William C. McKnight’s motion for summary judgment. For the reasons set forth, the defendant’s motion for summary judgment is ALLOWED.
BACKGROUND
The pleadings, deposition testimony, and answers to interrogatories present the following facts.[2] Albert and Alice Vincenzi were married and divorced. After the divorce the two remained friends. Albert lived in Revere and Alice lived in Arlington.
Between 1987 and 1997, Albert performed services for Alice which included cleaning her house, mowing the lawn, gardening, clearing snow, and general repairs. Albert would also balance her checkbook and pay her bills each month. He would take her shopping, and occasionally drive her to Cape Cod to see her father as well. In 1994 Alice had a stroke and Albert moved into her house for a period of approximately three and one half months. During that time, Albert *407 “kept house and took care of’ Alice. This included “see[ing] that she got her insulin properly,” driving her for dialysis three days a week, doing her shopping and banking, and driving her to doctor’s appointments. It also included washing her clothes, purchasing and stocking food, getting her medication at the pharmacy and helping to administer the medication. Albert performed these services for Alice because, as he testified at his deposition, the two were “friends.” Asked “you did them not intending to receive compensation, isn’t that correct?” Albert responded “That’s true, yes.”
Periodically Alice would pay Albert between five and twenty dollars for mowing the lawn. She would also, on occasion, give him money for gas. At some point, Alice gave Albert $ 1200 for him to get his car repaired.[3] She also gave Albert $150 that year. She gave him money on his birthday and “sometimes at Christmas.” Albert did not report any of these transactions as income on his income tax returns. At some point Albert borrowed $5,000 from Alice, which he repaid in installments over some number of months.
According to Albert’s deposition testimony, in May or June of 1992, Alice said to him, “I will help you financially and make eveiything all right.” Alice also said once to Albert “some day I’ll take care of everything, I’ll take care of matters,” but he does not remember when she made this statement. Regarding their shopping trips together, Alice once stated, “don’t worry, we will get together on this matter.”
On March 1, 1997, Alice added Albert’s name to her bank account at Cambridgeport Savings Bank in Arlington, Massachusetts. She did this as a convenience so that Albert could manage her finances. The account also bore the name of her nephew, Russell McKnight, as a co-signatory, but Russell McKnight lived in Ohio and Alice wanted someone geographically close to have access to her account.
On May 10, 1997, one day after Alice’s death, Albert took her passbook to the Cambridgeport Savings Bank and withdrew the entire $65,993.83 in the account. Albert testified at his deposition that, although he knew the money was not his while Alice was alive, he thought it was his after she died because “my name was on the passbook” and “I got the passbook first.” Albert deposited the entire amount into his personal bank account. He used $5570 of these funds to pay for Alice’s funeral, gave $30,000 to Shirley A. McKnight, Alice’s sister, and kept the rest.
Albert’s complaint asks for $55,000 on Count I, based on $100 per week for the ten years he helped Alice, and $5570 on Count II as reimbursement for her funeral expenses.
DISCUSSION
Summary judgment is granted where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine dispute of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of the claim at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the parly opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact in order to defeat the motion. Pederson, 404 Mass. at 17.
Count I sounds in contract; Albert claims that he and Alice entered into a contract under which she would pay for his services and companionship, and he would provide services in return for payment. The formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and consideration. See Quinn v. State Ethics Com’n, 410 Mass. 210, 216 (1987); Restatement (Second) of Contract §17 (1979). To constitute consideration, a performance or a return promise must be bargained for. Restatement (Second) of Contract §71 (1979). A performance or return promise is bargained for if it is sought by the promisor in exchange for his/her promise and is given by the promisee in exchange for that promise. Id.
All essential terms of a contract must be sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained. Simons v. American Dry Ginger Ale Co., 335 Mass. 521, 523 (1957). Contract terms cannot be vague. “The bargain must be determined by a meeting of the minds as to the essential terms before there can be a contract. No vital factors of it can be left to future negotiation. It must be wholly settled as to obligation and duty imposed . . .” Conos v. Sullivan, 250 Mass. 376, 378 (1924).
Albert’s own version of the facts establishes that his interaction with Alice involved no contract; the two never agreed upon any exchange, and never even discussed any definite terms. Rather, Albert’s deposition testimony and answers to interrogatories show that Albert performed services for Alice without expecting to be compensated, and that Alice made no specific promise of compensation.
Alice’s statements “I will help you financially and make everything all right,” “don’t worry, we will get together on this matter," and “some day I’ll take care of everything, I’ll take care of matters” were not sufficiently definite to constitute offers to enter into a contract. Rather, they expressed her intention to help *408 Albert financially and her appreciation for his help. See Hurl v. Merriam, 252 Mass. 411, 414 (1925). Her occasional gifts of money to him, and payments for particular services, expressed the same sentiments.
As a fail-back position in his opposition to the defendant’s motion for summaiy judgment, Albert asserts a theory of quasi-contract or quantum meruit, although no such theory appears in his complaint. Even if the theory had been pled, it would fail on the facts, since Albert’s own testimony establishes that he did not perform any services in reliance on any statement by Alice expressing her intention to pay for his services. See LiDonni, Inc. v. Hart, 355 Mass. 580, 583 (1969). Rather, his deposition testimony establishes that he performed services out of friendship for Alice.
As to Count II, Albert is not entitled to any recoupment for Alice’s funeral expenses, because he did not expend any funds of his own for those expenses. By his own admission, Alice added Albert’s name to her savings account as a convenience only, with no intention to transfer the money to him at any time. The money was hers during her life, and accordingly passed to her estate upon her death. Having paid for the funeral with funds belonging to her estate, Albert has no claim for reimbursement from it.
CONCLUSION AND ORDER
For these reasons, it is hereby ORDERED that defendant McKnight’s motion for summaiy judgment is ALLOWED.

In support of his opposition to the present motion, Albert has submitted an affidavit containing assertions of fact that are inconsistent with his sworn deposition testimony. This affidavit must be disregarded, as a party may not raise an issue of fact by submitting an affidavit contradicting his own deposition testimony. E.g. O’Brien v. Analog Devices, Inc., 34 Mass.App.Ct. 905, 906 (1993).

Albert’s deposition testimony describes this as a “gift,” and dates it in 1996. In his answer to interrogatories, he dates it in 1994 and characterizes it as “to partially reimburse me for services and to show her appreciation.”