MARK A. LOVERING[1] *vs.* RICHARD BEAUDETTE & another;[2]
MASSASOIT COMMUNITY COLLEGE, third-party defendant.

No. 89-P-333.

Plymouth. April 9, 1990. - June 13, 1991.

Present: ARMSTRONG, KASS, & SMITH, JJ.

*Commonwealth*, Officers and employees. *Agency*, Scope of authority or
employment. *Contract*, Lease of equipment, Indemnity. *Indemnity*.
*Constitutional Law*, Credit of the Commonwealth, Use of public money
or property. *Statute*, Construction.

The course of dealing between a lessor of construction equipment and a
party who agreed to pay for the rental of a well digger on behalf of
another did not demonstrate that the party agreed to be bound by an
indemnity clause in a standard form of rental contract. [667-669]

General Laws c. 15A, § 12, did not authorize an agency of the Common-
wealth to enter into an indemnity agreement, unlimited in amount, as
part of an equipment rental contract. [669-670]

Employees of a private charitable corporation who picked up and returned
from the lessor rented well digging equipment, the use of which was
paid for by another party, were not demonstrated to have had authority
to bind the corporation to an indemnity agreement, unlimited in
amount, appearing in a standard form of rental contract. [670]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 10, 1986.

A cross-claim against the defendant, Brockton Area Pri-
vate Industries Council, Inc., and a third-party complaint
were heard by *Allan M. Hale*, J.

*Martin P. Pentz* for Richard Beaudette.

*Peter M. Zuk*, Assistant Attorney General, for Massasoit
Community College.

---

[1]The action was brought in behalf of the minor plaintiff by his mother
and next friend, Gail DeFrain.

[2]Brockton Area Private Industries Council, Inc.

*Anthony D. Murphy* for Brockton Area Private Industries Council, Inc.

ARMSTRONG, J. Beaudette, doing business as Taylor Rental (and hereinafter called by that name), was sued for damages by one Lovering, who was injured using a well driver that had been rented from Taylor Rental. Taylor Rental brought a cross-action against the defendant Brockton Area Private Industries Council, Inc. (PIC), which was Lovering's employer at the time of the injury, and a third-party action against Massasoit Community College (Massasoit), which had rented the well driver for PIC's use. The cross-action and the third-party action were based on an indemnity theory, that either PIC or Massasoit, or both, were obliged under the standard Taylor Rental contract form to defend Taylor Rental and to hold it harmless if any claim should be brought against it arising out of the use of the rented equipment. The jury returned a verdict for Taylor Rental in Lovering's action for damages. Thus, only Taylor Rental's costs of defending the action, found by the judge to be $77,500, were at stake in the actions against PIC and Massasoit. These were tried to the judge, who found for PIC and Massasoit. The case is here on Taylor Rental's appeal.

The judge made detailed findings as to the circumstances of the rental. PIC, a private, charitable corporation, secured the agreement of Massasoit to let PIC use two acres, roughly, of Massasoit's campus in Brockton for community gardens: i.e., small plots gardened by community residents, the produce to be for their use only, not for commercial sale, Massasoit to have no obligations or liabilities to the users and to receive no rent from them. The project was in operation in 1985 when, in August, one Diehl, a project coordinator for PIC, approached one of Massasoit's assistant deans for administrative services, O'Leary, concerning the need of the gardeners for a more convenient source of water for their gardens. Diehl broached the possibility of driving a well, suggesting the use of rented well-driving equipment. PIC lacked money for the rental and hoped Massasoit might do the rental from its budget. O'Leary agreed, if the price were not

in excess of $100, and he secured the approval of his superior (the dean of administrative services) for this amount. Diehl checked with Taylor Rental, ascertained the equipment could be rented within that limit, and so informed O'Leary. O'Leary, following a standard practice for its dealings with Taylor Rental, executed an internal Massasoit purchase requisition (#6916) and forwarded it to Massasoit's business office for the generation of a purchase order. The purchase order, bearing the same number (#6916), in the amount of $39.10, and signed by the Massasoit comptroller, was forwarded to Taylor Rental, where it arrived before the well driver was picked up. Diehl then asked one Willett, an employee of PIC, to pick up the equipment. Willett went to Taylor Rental, received the well driver and ancillary equipment, and signed a Taylor Rental form under a line that acknowledged receipt of the equipment in good order, and over a line that states: "If other than Renter, signer represents he is Agent of and authorized to sign for Renter." The back of the complex form, to which the signer is directed by fine print in the upper right corner (but which Willett did not read before signing), contains the clause on which Taylor Rental relies: "You . . . agree to assume the entire responsibility for the defense of, and to pay, indemnify and hold Taylor harmless from . . . any and all claims for . . . bodily injury . . . resulting from the use . . . of the item, whether or not it be claimed or found that such damage or injury resulted . . . from Taylor's negligence, from the defective condition of the item or from any cause."

On returning the equipment, Willett signed a "final invoice" form containing indemnity language identical to that on the earlier form. This was forwarded to Massasoit, where it was stapled to a Massasoit standard invoice form on which was typed, in lieu of a description of the item to be paid for, "Vendor invoice attached." The invoice, amounting to $74.80, was approved by the comptroller and paid in due course.

The judge ruled correctly that the course of dealing in this case did not show that Massasoit agreed to be bound by the

indemnity clause of the Taylor Rental standard form contract. Massasoit authorized the rental of the well driver and agreed to pay for it, if furnished, by its signed purchase order form that was received by Taylor Rental prior to the pickup. There had been no discussion, at that time, of any terms of a rental contract other than the price and the description of the equipment to be rented. The Massasoit purchase order form instructed the vendor to prepare its own invoice form, to write on it the Massasoit purchase order number (i.e., #6916), and to forward it to Massasoit for payment. Taylor Rental correctly does not contend that Willett, who signed the Taylor Rental form, had actual authority to bind Massasoit in contract. His task of picking up the well driver carried with it no implied or apparent authority to enter into contractual obligations, and, in any event, it is well understood that those concepts have limited application to the government. See *Higginson* v. *Fall River*, 226 Mass. 423, 425 (1917)("a public officer cannot make a binding contract on behalf of a municipality without express authority"); *Savignano* v. *Gloucester Hous. Authy.*, 344 Mass. 668, 671-672 (1962), and cases cited. The usual rule is that "one dealing with the officers or agents of a municipal corporation must, at his peril, see to it that those officers or agents are acting within the scope of their authority." *Sancta Maria Hosp.* v. *Cambridge*, 369 Mass. 586, 595 (1976). Contrast *Transurface Carriers, Inc.* v. *Ford Motor Co.*, 738 F.2d 42, 45-46 (1st Cir. 1984)(where, in a nongovernmental contract, and partly on the basis of an answer to an interrogatory admitting, without qualification, to an agency relationship, the purchaser of a truck was deemed bound by a waiver of certain warranties executed by the person it sent to pick up the truck).

Taylor Rental argues, however, that the contract was entered into on Massasoit's behalf, not by Willett, but by O'Leary, who understood when he prepared the purchase requisition that Taylor Rental, as part of its routine procedure, would ask the person who picked up the equipment to execute its standard rental form contract that included the

indemnity clause — this having been Taylor Rental's unvarying practice in twenty-three prior rentals of equipment to Massasoit. Thus, it is argued, O'Leary had notice through prior dealings that a rental from Taylor Rental encompassed a promise to hold Taylor Rental harmless from claims.

It is doubtless fair to assume that, through the prior transactions, Massasoit knew or should have known the contents of Taylor Rental's standard form invoice, but it does not follow that Massasoit assented to all its terms. Massasoit's standard practice was to send Taylor Rental a purchase order describing the equipment to be rented and the price Massasoit would pay, provided the equipment was received in good order. Its subsequent act of paying the bill imports nothing more than its discharge of the obligation that arose on Taylor Rental's furnishing of the equipment pursuant to the purchase order. It does not indicate an assent by Massasoit to additional contract terms contained on an invoice form signed by one without actual authority, express or implied, to bind Massasoit.

There is an additional reason why Taylor Rental cannot prevail, also relied on by the judge. It is incumbent, as has been said, on one dealing with the government to know the limitations on the authority of the officer with whom he deals. The authority relied on by Taylor Rental is G. L. c. 15A, § 12, as amended by St. 1984, c. 468, authorizing Massasoit's board of trustees to make purchases in the amount of $2,000 or less without going through the office of the State purchasing agent. This statute confers no express authority to enter into open-ended indemnity agreements. The second sentence of § 1 of art. 62 of the Amendments to the Massachusetts Constitution commands that "[t]he credit of the commonwealth shall not in any manner be given or loaned to or in aid of any individual, or of any private association, or of any corporation which is privately owned and managed." Massasoit is an agency of the Commonwealth, and its obligations are obligations of the Commonwealth. Compare *Mitchell* v. *Metropolitan Dist. Commn.*, 4 Mass. App. Ct. 484, 487-488 (1976). Taylor Rental is privately

owned and managed. The indemnity clause at issue, unlimited in amount and pledging payment of others' obligations, is arguably a pledge of the credit of the Commonwealth in aid of a private individual or corporation. Nothing in *Opinion of the Justices*, 276 Mass. 617, 620-622 (1931), *Opinion of the Justices*, 291 Mass. 567, 570-571 (1935), or *Opinion of the Justices*, 359 Mass. 769, 773 (1971), cited by Taylor Rental, restricts the operation of art. 62, § 1, to debt obligations that are liquidated. It follows that there is, at least, reason to doubt that the indemnity clause could validly be incorporated in a Massasoit contract. To avoid constitutional doubt, G. L. c. 15A, § 12, should be construed so as not implicitly to authorize the trustees or their agents to enter into indemnity agreements of the type at issue here. *Verrochi* v. *Commonwealth*, 394 Mass. 633, 638 (1985). "Contract provisions which go beyond the scope of the statute are void." *White Constr. Co.* v. *Commonwealth*, 11 Mass. App. Ct. 640, 648 (1981).

The judge did not err in finding that neither Diehl nor Willett had authority to bind PIC to an indemnity contract. Diehl, so far as the record shows, never assented to or even knew of the provisions of the Taylor Rental form. There was no evidence of a prior course of dealing between Taylor Rental and PIC. Willett, although an employee of PIC, did not purport to sign as agent for it. Compare *Nat-Jo, Inc.* v. *Whitehead & Kales Co.*, 3 Mass. App. Ct. 796 (1975). Contrast *Johnson* v. *New York, N.H. & H.R.R.*, 217 Mass. 203, 207-208 (1914).

*Judgment affirmed.*