## ROBERT A. DAGASTINO *vs*. COMMISSIONER OF CORRECTION.

No. 99-P-701.

Suffolk. March 14, 2001. - September 5, 2001.

Present: PERRETTA, LAURENCE, & MASON, JJ.

*Commonwealth,* Contracts, Liability for statements, Officers and employees. *Contract,* With Commonwealth, Employment.

In an action before a jury for breach of contract arising from a Department of Correction's employee's telling a job applicant during an interview process that he was entitled to receive a higher salary based on his prior service, the judge should have directed a verdict for the Commissioner of Correction and should not have allowed the case to go to the jury, where the alleged contract for a higher-than-warranted salary was unenforceable as a matter of law because the department's employee lacked actual authority to bind either the department or the Commonwealth to any contractual obligation. [457-459]

CIVIL ACTION commenced in the Superior Court Department on December 2, 1993.

The case was tried before *Margaret R. Hinkle*, J.

*Ernest L. Sarason, Jr.*, Assistant Attorney General, for the defendant.

*Thomas M. Harvey* for the plaintiff.

LAURENCE, J. The Commissioner of the Department of Correction (defendant) appeals from a judgment on a jury verdict in favor of the plaintiff, Robert A. Dagastino, on his breach of contract action. The plaintiff had alleged that, at the end of his interview process for a position as a Department of Correction (DOC) recreation officer at Massachusetts Correctional Institution, Shirley — during which he had been interviewed by, among others, the facility's recreation director and the superintendent of the institution, but had never discussed salary — he had spoken with the deputy superintendent, Paul Ruane, who had been his supervisor during a prior nine-year stint as a

recreation employee at a State hospital. Upon the plaintiff's reluctant inquiry (he believing it unprofessional to raise the subject of wages), Ruane had told him — incorrectly, as it turned out — that, because of his prior service with the Commonwealth, he would receive a salary of $518.01 per week.

After accepting the position and receiving that salary for three weeks, the plaintiff had been compelled to take a reduction to the minimum salary for a new employee in his classification, $420.36 per week.[1] The reduction was the result of a union grievance. Upon learning of the plaintiff's heightened salary, the union had pointed out — accurately — that the plaintiff, as a new employee at the facility, was not eligible for the higher rate under the applicable collective bargaining agreement and could not unilaterally be awarded a higher salary by management.

A Superior Court jury agreed with the plaintiff that Ruane nonetheless had apparent authority to bind the defendant and the DOC with regard to the salary the plaintiff was told by Ruane he would receive (even though it was undisputed that Ruane had no actual authority to do so or to commit the Commonwealth contractually in any way). The jury accordingly returned a verdict that the plaintiff's pay reduction had constituted breach of a binding oral contract, resulting in damages of $18,398.00 (the difference between the salary Ruane had mentioned and the correct salary under the collective bargaining agreement over the period before the plaintiff's seniority brought him up to the promised level).

The defendant principally assigns as error the judge's denials of his motions for a directed verdict and a judgment notwithstanding the verdict, as well as the judge's charging the jury that they could consider whether the circumstances gave rise to apparent authority on Ruane's part. He argues that Ruane could not be deemed to possess apparent authority to bind the DOC or

---

[1]The plaintiff testified that, when he reported to the personnel office on his first day of work, a personnel employee had already filled in his "hiring forms," which stated his salary as $420.36 per week. Upon his remonstrance — telling the employee that "at my appointment interview we agreed upon five eighteen" — the employee had, apparently without question, changed the papers to reflect the higher figure.

the Commonwealth in any way.[2] We agree that the judge should have directed a verdict for the defendant and should not have allowed the case to go to the jury. The alleged contract for a higher-than-warranted salary was unenforceable as matter of law because Ruane lacked actual authority to bind either the DOC or the Commonwealth to any contractual obligation. We therefore reverse the judgment.

In this Commonwealth, public officials cannot make a binding contract "without express authority," *Higginson* v. *Fall River*, 226 Mass. 423, 425 (1917), and " 'have authority to bind their governmental bodies only to the extent conferred by the controlling statute.' " *Boston* v. *Back Bay Cultural Assn., Inc.*, 418 Mass. 175, 184 (1994), quoting from *White Constr. Co.* v. *Commonwealth*, 11 Mass. App. Ct. 640, 647 (1981), *S.C.*, 385 Mass. 1005 (1982), which also stated the related principle that "persons who deal with a governmental agency must take notice of limitations upon that agency's contracting power and cannot recover upon a contract which oversteps those limitations." *White Constr. Co.* v. *Commonwealth*, 11 Mass. App. Ct. at 648.

In short, the doctrine of apparent authority does not apply to the government, its agencies, or its officials. See *Lovering* v. *Beaudette*, 30 Mass. App. Ct. 665, 668 (1991). Accord *Federal Crop Ins. Corp.* v. *Merrill*, 332 U.S. 380, 384-385 (1947); *Sinclair* v. *Bow*, 125 N.H. 388, 391-392 (1984); *School Comm. of Providence* v. *Board of Regents for Educ.*, 429 A.2d 1297, 1302

---

[2]The defendant also argues that there was, in any event, no evidence in the record that Ruane's principal — the Commonwealth, represented in all dealings with unionized employees by the Commissioner of Administration or his delegee, the director of the State office of employee relations, see G. L. c. 150E, § 1 — had, through any words or conduct, manifested to the plaintiff that Ruane had any contracting authority (see Restatement [Second] of Agency § 8 [1958]); that any agreement to pay the plaintiff a salary higher than he would be entitled to under the applicable collective bargaining agreement would be unenforceable and against public policy as violative of the statute governing collective bargaining and the collective bargaining agreement in place (since together they forbid unilateral changes in mandatory subjects of bargaining, such as salary, without union approval); and that the plaintiff, an experienced State employee familiar with collective bargaining agreements, could not have reasonably relied on Ruane's statement regarding his anticipated salary. Although we are inclined to agree that on the record these contentions have merit (see note 3, *infra*), we need not reach them given the grounds of our opinion.

(R.I. 1981); Restatement (Third) of Agency § 2.03 comment g (Tentative Draft No. 2, 2001). "[T]hose who contract with the officers or agents of a governmental agency must, at their peril, 'see to it that those officers or agents are acting within the scope of their authority.' . . . Were it otherwise public officials could bind their governmental agencies to unlawful conduct by ready acquiescence in an agreement . . . and, thus, circumvent the restrictions on their powers." *Bowers* v. *Board of Appeals of Marshfield*, 16 Mass. App. Ct. 29, 34 (1983) (citations omitted), quoting from *Sancta Maria Hosp.* v. *Cambridge*, 369 Mass. 586, 595 (1976). See *Dunne* v. *Fall River*, 328 Mass. 332, 335 (1952). See also *Heckler* v. *Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 63-64 (1984) ("[T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law. . . [The Government cannot] be expected to ensure that every bit of informal advice given by its agents . . . will be sufficiently reliable to justify" the expenditure of substantial sums of money that cannot be recaptured), quoted in *Stadium Manor, Inc.* v. *Division of Administrative Law Appeals*, 23 Mass. App. Ct. 958, 962 (1987).

A few cases have intimated a limited, theoretical opportunity for relief for a party in the plaintiff's situation under the doctrine of estoppel, invoked in equity to avoid injustice in particular cases. However, the plaintiff cites to (and we know of) no case in which the doctrine was ever actually applied against a governmental agency in the Commonwealth. "Traditionally, courts have not permitted estoppel of the government," *McAndrew* v. *School Comm. of Cambridge*, 20 Mass. App. Ct. 356, 360 (1985), and the public interest in seeing legislative policies adhered to "overrides any equitable considerations." *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Authy.*, 387 Mass. 687, 693 (1982). As noted in *McAndrew* v. *School Comm. of Cambridge*, 20 Mass. App. Ct. at 361, "the rule against applying estoppel to the sovereign continues almost intact where a government official acts, or makes representations, contrary to a statute or regulation designed to . . . ensure some . . . legislative purpose. . . . Application of estoppel principles to bind the defendants to a contract of employment with the plaintiff would, in this case, run counter to express . . . legislative policy."

The issue of estoppel need not, however, detain us. Estoppel was not part of the jury verdict (which rested solely on apparent contractual authority, breach of contract, and consequent damages) and is therefore not encompassed within the judgment on appeal. Nor has the plaintiff made any coherent appellate argument, supported by reasons and citations to authorities, in an effort to demonstrate either the doctrinal existence or the applicability on this record of the principle of estoppel against the government,[3] and accordingly we do not further address the issue. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).[4]

*Judgment reversed.*

*Judgment for defendant.*

---

[3]We note in passing the inappropriateness of applying estoppel against the government when to do so would be contrary to legislative and public policy (here, the integrity of the collective bargaining process). See *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Authy.*, *supra*; *LaBarge* v. *Chief Administrative Justice of the Trial Ct.*, 402 Mass. 462, 468 (1988); *McAndrew* v. *School Comm. of Cambridge*, *supra*. We further observe that, whatever the standards may be for asserting estoppel against the government — even assuming the viability of such a claim in the Commonwealth — they must at least include an essential element of traditional equitable estoppel, reasonable reliance. See *O'Blenes* v. *Zoning Board of Appeals of Lynn*, 397 Mass. 555, 558 (1986). The plaintiff could not demonstrate such reliance here as matter of law. " 'Particularly where misstatements [by an official] . . . relied upon are oral, reliance on them may not be regarded as reasonable.' " *A P East, Inc.* v. *Board of Assessors of Westborough*, 40 Mass. App. Ct. 912, 914 (1996), and cases cited. It is also of interest, in this connection, that at the time he accepted the offer of employment, the plaintiff, out of caution based on previous employment experience with the Commonwealth (when he had also been a member of a union under a collective bargaining agreement, which he acknowledged he knew to be the source of the salary levels), requested a letter confirming his hiring at a salary of $518.01 per week. He never received such a letter or any response to his inquiry, or sought further written commitment or confirmation.

[4]Notwithstanding the unavailability of a contract action or an estoppel against the Commonwealth, a plaintiff may not be without remedy in a situation such as is here presented, by virtue of a timely action for negligent misrepresentation under G. L. c. 258, § 2. Cf. art. 11 of the Declaration of Rights of the Massachusetts Constitution; *Craig* v. *Everett M. Brooks Co.*, 351 Mass. 497, 499-501 (1967); *Mohr* v. *Commonwealth*, 421 Mass. 147, 164 & n.13 (1995).