Fishman, J.
These two consolidated actions seek damages for personal injuries that the plaintiffs allegedly sustained during a Halloween night party held at the Lowell Lodge #87 B.P.O.E. of U.S.A. (Elks Lodge) in October of 1998. The plaintiffs, Ol Ouern (Ouern), Phili Kim (Kim) and Souk Chanthachem (Chanthachem), originally filed their Complaint against the defendants, the Elks Lodge and Richard Juknavorian (Juknavorian), alleging six counts of negligence for the failure of the defendants to provide adequate security for the function. Kim and Chanthachem subsequently filed an amended complaint dismissing Ouern as a plaintiff. Thereafter, Ouern filed his own complaint against the Elks Lodge, and the two cases were consolidated.
The Elks Lodge filed a Third-Party Complaint against the City of Lowell (City), the Lowell Police Department (Police Department), and an individual police officer. The Third-Party Complaint alleges that, as a result of the City of Lowell’s failure to provide police detail at the October 31, 1998 party, the Elks Lodge is entitled to contribution, pursuant to G.L.c. 23 IB, from the City of Lowell, the Police Department, and the officer (Count I, II and III). It further alleges breach of contract against the City, the Police Department, and the officer (Count IV, v. and VI).
In an opinion dated August 22, 2002 (Middlesex Sup. Ct., Sanders, J.), the Third-Party Defendants’ motion to dismiss the Third-Party Complaint was allowed as to Counts I, II, III, v. and VI. The Court found no evidence that the Police Department was a separate legal entity from the City and thus dismissed Counts II and V. Further, the Court dismissed Counts III and VI against the individual officer and Count I against the City pursuant to the Massachusetts Tort Claims Act (MTCA). However, Count IV for breach of contract against the City survived the motion to dismiss.
The City, as Third-Party Defendant, now moves for summary judgment, pursuant to Mass.R.Civ.P. 56, on the breach of contract claim. For the reasons discussed below, that motion is DENIED.
BACKGROUND
The facts viewed in the light most favorable to the Elks Lodge as the non-moving party are as follows.
On or about Monday, October 26, 1998, Deborah Nangle (Nangle), Assistant Manager of the Elks Lodge, contacted the Personnel and Detail Office of the Police Department and requested a police detail of two officers for the Elks Lodge on October 31, 1998, between *430 8:00 p.m. and 12:00 a.m. Tha Chanh (Chanh) had rented the hall in the Elks Lodge for a Halloween party. In order to cover the cost of the police detail, Chanh executed a check payable to the City for $247.00. Chanh gave the check to the Elks Lodge to deliver to the police detail on October 31. The Elks Lodge is responsible for paying the police detail if the party renting the hall fails to do so. The Elks Lodge has covered this expense in the past.
In October of 1998, two employees of the City operated the Personnel and Detail Office in the Police Department, Sergeant David Abbott (Abbott) and Administrative Assistant Georgia Themeles (Themeles). Abbott and Themeles were responsible for assigning police officers to details, billing for the police detail, and ensuring that the officers were compensated. The officers were normally paid directly by the private party requesting the detail. The funds are then deposited into the City of Lowell’s general fund, and the City pays the officers. Both Abbott and Themeles answered the telephones and processed the requests for police detail. Because the Elks Lodge called to request police details numerous times in the past, both Abbott and Themeles were familiar with Nangle. Nangle does not recall to whom she spoke concerning the Elks Lodge’s request for a police detail for October 31, 1998.
On October 26, 1998, Themeles processed Nangle’s request for the police detail, and it was posted on a list of police details both in Abbott’s office and in the front desk of the Police Department. Officers in the Police Department normally sign up for police detail work voluntarily. However, in October of 1998, numerous officers were owed thousands of dollars in unpaid details. Furthermore, the Police Department did not have enough officers to fill all of the detail requests for October 31, 1998. No officers signed up for the detail at the Elks Lodge.
At approximately 9:30 p.m. on October 31, 1998, after Chanh’s party was underway, the Elks Lodge bartender, Sheri Thyne (Thyne), called the Police Department to inquire as to the whereabouts of the police detail. She was told that a detail was on its way. When no police officers arrived within fifteen minutes, Thyne called again. She was told that there was no detail available because it was Halloween and the police were very busy. However, Thyne was also informed that a police officer patrolling the area would stop by the Elks Lodge to check on things. Another Elks Lodge bartender, Christopher Longtin (Longtin) called the Police Department around 8:30 p.m., and again at 10:00 p.m. that evening, to inquire about the police detail. He was also told that an officer on patrol would stop by.
Detective Phillip Conroy (Conroy) was patrolling in plainclothes near the Elks Lodge and visited the hall at approximately 9:00 p.m. Seeing that there was no police presence, Conroy contacted the Police Department to make them aware of the situation. Conroy returned to the Elks Lodge around 10:00 p.m. and walked around the hall for about ten minutes. Observing rival gang members among the 300-350 guests in the hall, Conroy again called the Police Department and requested police visibility.
Shortly after 11:00 p.m., a melee broke out at the Elks Lodge during which gunshots were fired, and the three plaintiffs were allegedly injured.
DISCUSSION
This Court grants a motion for summary judgment where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Mass.R.Civ.P. 56(c). The City of Lowell, as the moving party, bears the burden of affirmatively demonstrating the absence of a triable issue, and that the record entitles the City to judgment as a matter of law. Penderson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who will not bear the burden of proof at trial “is entitled to summary judgment if [it] demonstrates, by reference to material described in Rule 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Flesner v. Technical Communications Corp., 410 Mass. 805, 808 (1991); Kourouvacilis, 410 Mass, at 716. The Elks Lodge, as the non-moving party, may not defeat the City’s motion for summary judgment by resting on the allegations and denials of its pleadings, but must set forth specific facts, with materials described in Mass.R.Civ.P. 56(e), to show that there is a genuine issue for tried. Lalonde v. Eissner, 405 Mass. 207, 209 (1989).
The parties agree that there was no written contract. Rather, the Elks Lodge alleges that the City breached an express oral contract to provide a police detail at the Elks Lodge. The City argues that it is entitled to summary judgment because the Lowell City Code of Ordinances (Ordinance) requires that all contracts made on behalf of the City be signed by the administrative department head and the mayor. The City also argues that, even if a contract need not meet the requirements of the Ordinance, the Elks Lodge cannot prove the existence of the essential elements of an oral contract. Finally, the City maintains that the MTCA bars recovery on the contract claim.
The Ordinance only requires that contracts for $2,000 or more be in writing and be approved by the mayor and the department head.[1] The cost of the police detail was $247.00. Therefore, it was not necessary for the Elks Lodge to have a written contract signed by the department head of the Police Department and the mayor.[2]
The Elks Lodge claims that an express oral contract existed between it and the City. “It is well settled that an agreement need not be in writing in order to be *431 enforceable. See Restatement (Second) of Contracts §19 (1981).” ESO, Inc. v. Rasparian, 32 Mass.App.Ct. 731, 733-34 (1992). The City asserts that the terms of the alleged agreement were too vague to constitute a valid contract. Further, it contends that the Elks Lodge cannot prove mutual assent or acceptance by the Police Department and that the alleged agreement lacks consideration.
In order to have an enforceable contract, “there must be [an] agreement on the essential terms of the transaction in order that the nature and extent of the parties’ obligations can be determined and . . . enforced.” Novel Iron Works, Inc. v. Wexler Construction Co., 26 Mass.App.Ct. 401, 408 (1988). See also Simons v. American Dry Ginger Ale Co., Inc., 335 Mass. 521, 523 (1957) (meaning of oral contract must be ascertainable with reasonable certainly). Nangle contacted the Personnel and Detail Office of the Police Department on Monday, October 26, 1998, spoke with either Themeles or Abbott, and requested a police detail of two officers for the Elks Lodge on October 31, 1998, between 8:00 p.m. and 12:00 a.m. Themeles processed Nangle’s request and the request was posted on a list of police details both in Abbott’s office and in the front desk of the Police Department. It is the City’s position that because there is no evidence of a promise by the Police Department to provide a detail, the services those officers were to perform, and the names of the officers who were to perform the detail, the alleged contract is too indefinite to be enforceable. However, a contract is not unenforceable “if, when applied to the transaction and construed in the light of the attending circumstances,” the meaning can be ascertained with reasonable certainty. Simons v. American Dry Ginger Ale Co., Inc., 335 Mass. 521 (1957), citing Cygan v. Megathlin, 326 Mass. 732, 734; Restatement Contracts, §235 (d), comments e and f.
This is not a case where “the promise given and relied on was so vague that it can be given no effect.” Simons v. American Ginger Ale Co., Inc., 335 Mass. 521, 524 (1957), citing Weiner v. Pictorial Paper Package Corp., 303 Mass. 123, 131-32 (1939). There remains a question of material fact as to whether the terms of any agreement made by Nangle and a member of the Police Department are ascertainable with reasonable certainty, and, therefore, summary judgment is inappropriate. Cardone v. Boston Regional Medical Center, Inc., 60 Mass.App.Ct. 179, 186 (2003) (where the terms of the contract are “ambiguous, uncertain, or equivocal in meaning, the intent of the parties may depend on disputed facts requiring a trial”).
The City also posits that, because Nangle does not remember with whom she spoke at the Police Department when she called to request a police detail, and because she did not receive written or oral confirmation that a police detail would be provided, there was not mutual assent and acceptance by the City. Drawing inferences most favorable to the Elks Lodge, there is evidence in the summary judgment record that the Police Department assented to this request for a police detail. Abbott confirms that a police detail was requested for the Elks Lodge and this request was posted on a list of police details both in Abbott’s office and in the front desk of the Police Department. It is disputed whether Themeles or Abbott made an oral assurance to the Elks Lodge that a police detail would be provided for the Halloween night party. Nangle states that it was customary for her to call the Police Department, request a police detail for the Elks Lodge, and the Police Department would supply a detail. Abbott also testified that Nangle had previously called and made requests for police details for the Elks Lodge and, in response, he had assigned officers to the Elks Lodge. Abbott did not recall any of the past detail requests by the Elks Lodge being unfilled. Accordingly, there exist genuine issues of material fact as to whether there were mutual assent and acceptance on the part of the City of Lowell. See Trant v. Dilboy, 1994 WL 879672, *3, 2 Mass. L. Rptr. 275 (Mass.Super.Ct. June 10, 1994) (Cowin, J.) (where the plaintiff was injured while attending a party held at a V.F.W. hall and the V.F.W. filed a third-party complaint against the City of Somerville for breach of contract for failure to provide the requested police detail, summary judgment was denied “because ordinarily whether a contract has been made is a question of fact better left for the jury to decide . . .”).
The City argues further that the alleged contract lacks consideration. It claims that even if it did promise to provide a police detail, it would not have received any benefit from that promise because the detail officers are paid directly by the private party requesting the detail. “It is irrelevant whether consideration moves from the promisee directly to the promisor, from the promisee to a third party at the promisee’s direction, or from a third person at the promisee’s direction to the promisor, so long as the promisee incurs detriment or the promisor receives benefit.” New Bedford Institution for Savings v. Gildroy, 36 Mass.App.Ct. 647, 657 n.13 (1994). The City arguably received a benefit because its police officers have a source of supplemental income in these voluntary, paid police details. Moreover, the presence of a police detail may obviate the need for the presence of on-duty patrols at the location of the detail. Furthermore, the funds for the details are deposited into the City of Lowell’s general interest-bearing account before being paid out to the officers.
The City also maintains that the Elks Lodge did not sustain a detriment because it does not pay for the police details, but rather the private individuals renting out the hall pay the police officers directly. The Elks Lodge arguably incurred a detriment because the cost of the police detail, which was Chanh’s responsibility, could have factored into the price he was *432 willing to pay to rent the hall. Furthermore, the Elks Lodge is responsible for paying the police detail if the party renting the hall fails to do so, and the Elks Lodge has done so in the past. Thus, there exists a genuine issue of material fact as to whether there was consideration for the alleged contract.
While, as matter of general contract law principles, there are genuine issues of material fact regarding the existence of an enforceable contract between the Elks Lodge and the City, “[s]everal prerequisites must be in place before a municipality can be said to have entered into a valid contract.” Mass. General Hospital v. City of Revere, 385 Mass. 772, 774 (1982), rev’d on other grounds, 463 U.S. 239 (1982). The first requirement is “an underlying authority in the municipality to make the contract.” Id. There is nothing in the Ordinance that prohibits the Police Department from contracting for detail services with private parties. Furthermore, as discussed above, the Ordinance only requires that contracts for over $2,000 be in writing and authorized by the department head and the mayor. Ordinance, Art. I, Div. 2, §29. While “[t]here can be no contract with [the City of Lowell] unless statutory requirements are fulfilled,” there are no Ordinances that prohibit the Police Department from entering into contracts with a private party for a police detail as was done in this case. Mass. General, 385 Mass, at 775.
The second prerequisite that must be in place before a municipality can be said to have entered into a valid contract is that any contract made on behalf of a city must be made by a duly authorized agent. Mass. General, 385 Mass, at 775. “In this Commonwealth, public officials cannot make a binding contract ‘without express authority’. . . ‘and have authority to bind their governmental bodies only to the extent conferred by the controlling statute.’ ” Dagostino v. Commissioner of Correction, 52 Mass.App.Ct. 456, 458 (2001) (internal citations omitted). There is nothing in the Ordinance that expressly grants police officers or others within the Police Department the authority to contract.
The leading cases dealing with municipal contracts, however, all involve contracts that fail to comply with statutory requirements, and the courts have consistently refused to enforce such contracts in order to place cities and towns on a sound financial basis and prevent fraud, waste and abuse. United States Leasing Corp. v. Chicopee, 402 Mass. 228, 231 (1988); see also, Mass. General, 385 Mass, at 775, Richard D. Kimball Co. v. Medford, 340 Mass. 727 (1960). Clearly, this policy is aimed at preventing officers or agents of a municipality from acting beyond the scope of their power and binding the municipality to agreements involving the expenditure of substantial sums of municipal money. Dagostino, 52 Mass.App.Ct. at 459. Consistent with that policy, the Ordinance in this case is designed to limit the power of public officials and agents in making contracts so as to unify control of the city’s commercial transactions and guard against waste by departments in government. See Boston Edison Co. v. City of Boston, 390 Mass. 772, 776-78 (1984). In the instant case, the parties did not fail to comply with statutory requirements. Nor can it be said that the purpose behind the Ordinance and cases describing a requirement of express statutory authorization applies here. Indeed, it is obviously not within the public interest for the City to be barred from contracting for any goods or services in an amount less than $2000 because of the apparent absence of any statute or ordinance authorizing anyone within the City to make such contracts.
It is far more reasonable, and, indeed, a matter of common sense, to conclude that implicit in the Ordinance is the power of the City to authorize agents other than the department heads and the mayor to enter into contracts in amounts of less than $2000. While such City employees may not have “inherent powers” to enter into such contracts, “[i]t is elementary in the law of cities and towns that their officers have . . . such powers to bind their municipalities by contract as are conferred by the express terms or necessary implications of statutes.” Simpson v. City of Marlborough, 236 Mass. 210, 213 (1920) (emphasis added); see also Flynn v. City of Cambridge, 383 Mass. 152, 157 (1981), quoting 3 C. Sands, Sutherland Statutory Construction §64.02 (4th ed. 1974) (“When analyzing a grant of power to a municipal government we must keep in mind that ‘a grant of an express power carries with it all unexpressed, incidental powers necessary to carry it into effect’ ”). The Ordinance here only specifically addresses contracts in excess of $2000. Ordinance, Art. I, Div. 2, §29. The “necessary implication” of this Ordinance is that contracts for less than $2,000 need not be in writing and may be approved by persons other than the mayor and department head.[3]
While “[a] person who enters into a contract with a public officer who undertakes to act for and to bind municipal corporation must at his peril ascertain extent of authoriiy of public officer with whom he deals,” Potter & McArthur, Inc. v. City of Boston, 15 Mass.App.Ct. 454, 459 (1983), the authority of an agent is a question of fact. Baldwin’s Steel Erection Co. v. Champy Constitutional Co., 353 Mass. 711 (1968). Nothing in the Ordinance or the General Laws grants police officers the express authority to contract on behalf of the City of Lowell, but there is also nothing which expressly prohibits police officers from doing so. See Ordinance; G.L.c. 41, §98 (delineates the powers of police officers but does not expressly give the power to contract to police officers). Furthermore, there is evidence that it was the long-standing practice of the Police Department, through its Personnel and Detail Office, to enter into agreements to provide police details. The Elks Lodge and the Police Department had entered into such agreements in the past, and on this *433 particular night, the Elks Lodge made a considerable and repeated effort to obtain a detail to keep the peace and ensure the laws of the Commonwealth were obeyed. Abbott and Themeles had the responsibility for assigning details, billing customers and ensuring that the detail officers were paid. For these reasons, summary judgment is inappropriate because a genuine issue of material fact exists concerning whether these municipal employees had authority to contract with the Elks Lodge.
Finally, the City argues that the Elks Lodge’s contract claim is essentially the same as its negligence claim which was dismissed pursuant to the MTCA. Where the essential nature of a claim against a public entity is recovery for personal injuries founded on negligence, the cause of action, whether framed as an action in tort or contract, is governed by the MTCA. Schenker v. Binns, 18 Mass.App.Ct. 404, 406 (1984). The Elks Lodge’s negligence claim was based on facts and theories that differ from the essence of its contract claim. The dismissed claim included the allegations that the Police Department was negligent in failing to provide security when it had knowledge that rival gangs were present at the party, and in failing to inform the Elks Lodge that an armed gang was en route to the party. The negligence claim was also based on the Police Department’s assurances of safety to the Elks Lodge. When determining whether a contract claim is essentially the same as a negligence claim under the MTCA, this Court must examine not only the theories upon which that plaintiff elects to proceed, but also compare the substance of the claims that are asserted. Id. at 406-07. As noted above, such an examination here reveals that the contract count is substantially different from the negligence count.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Third-Party Defendant, City of Lowell’s Motion for Summary Judgment is DENIED.

Ordinance, Art. I, Div. 2, §29 reads: “All contracts made by any department, board or commission where the amount involved is two thousand dollars ($2,000.00) or more shall be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor... and also of the officer or the head of the department. . . making the contract, is affixed thereto.” The Ordinance provision is modeled after the provision contained in G.L.c. 43, §29 (“All contracts made by any department, board or commission where the amount involved is five thousand dollars or more shall be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor . . . and also of the officer or the head of the department. . . making the contract is affixed thereto”).

The City relies on Art. I, Div. 2, §46(4) (1922), which requires all contracts to be signed by the Department head and the mayor. Ordinance, Art. I, Div. 2, §46(4) has been superseded by Art. I, Div. 2, §28 etseq. (1944).

It is a rule of statutory construction that “a statutory expression of one thing is an implied exclusion of other things omitted from the statute.” County of Middlesex v. Newton, 13 Mass.App.Ct. 538, 542 (1982), quoting Brady v. Brady, 380 Mass. 480, 484 (1980). Here, the inclusion of specific requirements for contracts $2000 or more is an implied exclusion of these same requirements for contracts less than $2000.