The plaintiff Northside Recycling, Inc. (Northside) sued the city of Salem and its mayor and city council (collectively, the city) in a dispute over Northside's failed attempt to purchase a city-owned solid waste transfer station. A Superior Court judge, concluding that the city had not entered any contract to sell the property, ordered summary judgment for the city, and Northside appealed. We agree with the judge and therefore affirm.
Background. The following facts were undisputed. For some time prior to 2007, Northside had leased and operated a transfer station on a 9.2 acre parcel of city-owned land. The property had significant environmental problems. In 2007, the city issued a request for proposals (RFP) for the purchase or long-term lease of the property, for continued use as a transfer station or for other development. The RFP stated in part as follows:
"It is the intention of the City[ ] to accept the proposal most advantageous, taking into consideration the relative prices and relative merits of each proposal. The City, acting through its Mayor and City Council, reserves the right to accept or reject any or all proposals ...."
"The invitation for Proposals, and the proposal when accepted by the City, shall constitute an agreement for sale between the successful proposer and the City. Such agreement shall constitute the whole contract to be succeeded only by the formal instruments of transfer, unless modified in writing and signed by both parties."
Northside submitted a proposal offering to purchase the property. In July of 2007, the city solicitor sent a letter to Northside that stated in part: "[T]he city's selection committee for the sale or lease of the transfer station has ranked your company first.... We would like to meet with you next Thursday ... to negotiate contract terms. Once we have reached a tentative agreement, we will submit such to the City Council in September, 2007 for acceptance." In March, 2008, the city council voted to declare the property surplus, but did not vote at that time to accept or reject Northside's proposal or to authorize the mayor to sell the property. A group of abutters initiated litigation over environmental permitting issues, in which the city, joined by Northside as an intervener, ultimately prevailed. See Theophilopoulos v. Board of Health of Salem, 85 Mass. App. Ct. 90 (2014). In 2015, however, the city council voted not to proceed with the proposed sale to Northside.
Northside filed this action, alleging that the city solicitor's letter constituted an acceptance of Northside's proposal, forming a binding contract to sell the property. Northside asserted claims for (1) a declaratory judgment that the city had made such a contract, (2) damages for the city's alleged breach of that contract, (3) quantum meruit, (4) restitution,[4] and (5) violations of G. L. c. 93A.
The city defended primarily on the ground that it had never made such a contract. It relied on the language of the RFP reserving its right, "through its Mayor and City Council ... to accept or reject any or all proposals." It also relied on the provisions of two city ordinances governing the sale of city land. Under the city of Salem Code of Ordinances (ordinances) § 2-277, "[t]he city council may convey or lease real estate only by a vote of two-thirds of all its members." And under ordinances § 2-1635(d), when the city planner recommends that the mayor be authorized to sell a parcel to a particular purchaser, "[u]pon approval of [that] recommendation by the city council ... the recommendation shall be referred to the mayor," and "[u]pon approval of the sale by the mayor, the city solicitor shall set a date for transfer of the parcel from the city to the purchaser." Ordinances § 2-1365(d)(9), (10).
On cross motions for summary judgment, the judge concluded that the RFP conditioned acceptance, and the ordinances conditioned any conveyance, on the approval of the city council and mayor. No such approvals had occurred, which was "fatal to [Northside's] claim that there is an enforceable contract." The judge disposed of the remaining claims on related grounds, and Northside appealed.[5]
Discussion. The city could obtain summary judgment by demonstrating that Northside had no reasonable expectation of proving an essential element of its case. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). We consider the facts in their light most favorable to Northside, drawing all reasonable inferences in its favor. See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 38 (2005).
1. Contract claims. Under the plain language of the RFP, an agreement for sale could be formed only when a proposal was "accepted by the City," and "[t]he City, acting through its Mayor and City Council, reserve[d] the right to accept or reject any or all proposals." We think it clear that the city solicitor's letter did not constitute an acceptance of Northside's proposal. The RFP reserved to the mayor and city council the power to accept or reject that proposal; it could not be exercised by the city solicitor. It is undisputed that the city council (let alone the mayor) never accepted the proposal. To the contrary, in 2015, the city council formally voted not to proceed with it.
Moreover, the city solicitor's letter made clear that it was not itself an acceptance. The letter said only that a selection committee had "ranked [Northside] first," and it proposed that the parties meet "to negotiate contract terms." Once the parties "reached a tentative agreement," that agreement would be submitted to the city council "for acceptance."[6]
The relevant ordinances produce essentially the same result. They required a two-thirds vote of the city council and approval of the mayor before the property could be conveyed to Northside. See ordinances §§ 2-277, 2-1635(d). Even if the city solicitor's letter had expressly purported to accept Northside's proposal, it could not bind the city to convey the property.
Northside responds that, although these ordinances may restrict the city's power to perform an agreement to sell property, they do not restrict city officials' power to make such an agreement. Northside thus argues that, even if specific performance is not an available remedy for the city's breach of the claimed agreement, the city is still liable for damages -- specifically, for at least $12 million, which Northside alleged was the fair market value of the land. This ignores the settled principle that "persons who deal with a governmental agency must take notice of limitations upon that agency's contracting power and cannot recover upon a contract which oversteps those limitations" (emphasis added). Dagastino v. Commissioner of Correction, 52 Mass. App. Ct. 456, 458 (2001), quoting White Constr. Co. v. Commonwealth, 11 Mass. App. Ct. 640, 648 (1981), S.C., 385 Mass. 1005 (1982). Northside's position, if accepted, would frustrate an obvious purpose of the ordinances: to centralize, in the city council and mayor, control of and accountability for the disposition of city resources.[7]
Northside also argues that, because the city stated in its appellate brief in the Theophilopoulos litigation that it had "accepted" Northside's proposal, judicial estoppel now bars the city from denying that such acceptance occurred. We disagree. For judicial estoppel to apply, the party sought to be estopped must have "convinced the court to accept its prior position." Bay State Gas Co. v. Department of Pub. Utils., 459 Mass. 807, 818 (2011). That element is missing here. The court in Theophilopoulos merely said, in reciting the background of the dispute, that the city had "selected" Northside's proposal. 85 Mass. App. Ct. at 92. The court was not called upon to determine the precise relationship between Northside and the city; rather, the court "dealt ... only with the [solid waste] site assignment process," id. at 103, and nothing in the court's analysis of that issue turned on whether the city had accepted Northside's proposal. In sum, the judge correctly entered judgment for the city on Northside's contract claims.
2. Chapter 93A. Northside based its G. L. c. 93A claim on allegations that the city had acted unfairly or deceptively by refusing to transfer the property and attempting to obtain additional concessions from Northside as conditions of performing the claimed contract for sale of the property. This claim was entirely dependent on the existence of a contract; as no such contract was formed, the c. 93A claim failed.[8] See Park Drive Towing, Inc. v. Revere, 442 Mass. 80, 85-86 (2004) (where vendor's c. 93A claim was "derivative of its breach of contract claim," court's conclusion that "no contract existed between the parties" caused c. 93A claim to fail). See also id. at 83 n.7 ("a party cannot evade the statutory limitations on a municipality's contracting power by rendering services and subsequently seeking recovery based on alternative theories").
Northside responds that its c. 93A claim was also based on the city's "repeatedly promising," even before the RFP process, to sell the property to Northside. Northside argues that these promises induced it to spend substantial sums on environmental reports and other costs related to the property -- sums it would not have spent had it known that the sale was contingent on what Northside calls "the notoriously unreliable City Council." But, even if we put to one side that any such promises would be unenforceable (and reliance upon them unreasonable) in light of the city ordinances discussed above, Northside offered insufficient evidence of such promises to survive the city's summary judgment motion.
Northside's argument relied entirely on the affidavit of its project manager, which recited in conclusory fashion that the city had repeatedly promised to sell the property to Northside. The affidavit furnished no information whatsoever about who had made such promises, or in what form, or when, or to whom they had been made.[9] "[V]ague allegations and conclusory statements" are insufficient to create an issue of material fact; to defeat summary judgment, affidavits must "allege facts, as opposed to conclusions." First Nat'l Bank of Boston v. Slade, 379 Mass. 243, 246, 253 (1979). The judge correctly ordered summary judgment for the city on Northside's c. 93A claim.
Judgment affirmed.

The quantum meruit and restitution claims were based on Northside's allegation that, in reliance on the city's alleged acceptance of Northside's proposal, Northside had spent over $650,000 on design, regulatory compliance, and other services, and that the city had benefited from those expenditures.

Northside makes no argument on appeal that the judge erred in rejecting its quantum meruit and restitution claims, and thus we do not address them further, except to say that we see no error in the judge's ruling for the city on those claims.

Northside insists that the letter's request to negotiate was merely a ministerial, postagreement step towards drafting a deed and related documents, in furtherance of the RFP's provision that the agreement for sale would "constitute the whole contract to be succeeded only by the formal instruments of transfer." The letter, however, plainly proposed "to negotiate contract terms," working toward "a tentative agreement" that still required the city council's "acceptance." The letter cannot reasonably be construed as an acceptance that formed a contract.

Nor would the city solicitor's letter give rise to estoppel against the city. As explained in Cameron Painting, Inc. v. University of Massachusetts, 83 Mass. App. Ct. 345 (2013), "[c]ourts have traditionally been 'reluctant to apply principles of estoppel to public entities where to do so would negate requirements of law intended to protect the public interest.' " Id. at 350, quoting Phipps Prods. Corp. v. Massachusetts Bay Transp. Authy., 387 Mass. 687, 693 (1982).

We therefore need not decide whether the city, as a municipality, is ever amenable to suit under c. 93A, or whether the city in this instance was engaged in "trade or commerce," as would be required for a successful c. 93A claim. See Beverly v. Bass River Golf Mgt., Inc., 92 Mass. App. Ct. 595, 605 (2018).

The same is true of Northside's additional argument in support of its c. 93A claim: that the city "promised to reimburse Northside for all of its engineering expenses if Northside was not awarded the bid" in the RFP process. The affidavit includes nothing more than that conclusory statement.